In the Matter of O'NEILL ENTER-
PRISES, INC., Bankrupt.
No. 71–BK–130–C.

United States District Court,
W. D. Virginia,
Charlottesville Division.

March 14, 1973.

David J. Wood, Jr., Charlottesville, Va., for William H. White, III.

T. Munford Boyd, Charlottesville, Va., for Gray Williams, Trustee in Bankruptcy.

DALTON, District Judge.

This case comes before the court upon a petition, filed on December 27, 1972, by William H. White, III, for review of an order entered by Philip H. Hickson, Referee in Bankruptcy, dated December 20, 1972, which found that the transfer by deed of trust, dated September 23, 1971, of additional security from the bankrupt O'Neill Enterprises, Inc., to trustees Edward H. Deets, Jr. and George Gilmer constituted a voidable preference and was therefore null and void. The court finds jurisdiction to review the order under sections 23 and 39(c) of the Bankruptcy Act, as amended (11 U.S.C.A. §§ 46 and 67(c)). The provisions concerning preferred creditors, applicable to this case, are outlined in section 60 of the Bankruptcy Act, as amended (11 U.S.C. § 96):

§ 60. Preferred Creditors. a. (1) A preference is a transfer, as defined in this Act, of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this Act, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class.

b. Any such preference may be avoided by the trustee if the creditor receiving it or to be benefited thereby or his agent acting with reference thereto has, at the time when the transfer is made, reasonable cause to believe that the debtor is insolvent. Where the preference is voidable, the trustee may recover the property, or, if it. has been converted, its value from any person who has received or converted such property, except a bona-fide purchaser from or lienor of the debtor's transferee for a present fair equivalent value: . . .

The parties have not disputed two elements of a preference, as outlined in § 60(a)(1), viz., that the transfer occurred within four months of the filing of the bankruptcy petition, and that the transfer would enable the creditor to receive a greater percentage of his claim than some other creditor of the same class. The court notes that the transfer of the security by deed of trust was perfected when it was recorded in the clerk's office of the Corporation Court of the City of Charlottesville on October 7, 1971 and that the involuntary petition of bankruptcy was filed on December 30, 1971. Therefore, the transfer occurred within the four month statutory period.

The questions for the court to consider are:

1) Was the transfer of the security made for the benefit of the creditor, William White, or on account of an antecedent debt?

2) Was O'Neill Enterprises, Inc. insolvent on October 7, 1971, the date of perfection of the transfer?

3) Did the creditor, Mr. White, have reasonable cause to believe that O'Neill Enterprises, Inc. was insolvent on the date of the transfer?

FACTS

On September 23, 1969, a local realtor, Dr. Charles Hurt, sold to O'Neill Enterprises, Inc. (bankrupt) a large tract of valuable property in Charlottesville known as "Willoughby" and accepted in part payment $210,000.00 of the bonds of the bankrupt secured by a vendor's lien upon the real estate. The deed provided for a substitution of collateral, and in exercise of the substitution clause, the vendor's lien upon the Wil-

loughby tract was released on May 21, 1970 and in its place a subordinate deed of trust was placed upon three parcels of business real estate as security for the $210,000.00 worth of bonds held by Dr. Hurt.

The substitute deed of trust embodied a provision that upon payment of the first $25,000.00 principal installment on the secured bonds, the lien upon one designated parcel of the encumbered property should be released.

On May 28, 1970, Dr. Hurt purchased from the petitioner, William White, a valuable tract of land located in Albemarle County, known as "Greencroft". In part payment, Dr. Hurt delivered to White $186,000.00 of the $210,000.00 of bonds of the bankrupt which he had received in the sale of the Willoughby property.

On September 23, 1970, the bankrupt paid the initial $25,000.00 installment to White and the bond debt held by White was thereby reduced to a balance of $161,000.00. Upon payment of the $25,000.00 installment, the designated parcel of property was released from the deed of trust. The balance of the bond debt continued to be secured under the second lien deed of trust upon the remaining two parcels of real estate.

The bankrupt corporation is one of four subsidiary or interrelated corporations formed, wholly owned or completely dominated by Frank A. O'Neill, who also conducted extensive business and held extensive real estate in his individual capacity and name.

In 1969 a shortage of operating capital developed largely as a result of the requirements and needs for additional operating capital of Building Systems, Inc., a bankrupt subsidiary with an extensive plant for construction of prestressed concrete modular hotel, dwelling and commercial units.

During 1970 and 1971, the bankrupt attempted to sell everything it owned but met with little success due to the slow market for commercial property and the public rumor that O'Neill Enterprises, Inc., was heavily in debt and unable to meet its obligations.

In July 1971, David W. Carr, vice-president of O'Neill Enterprises, Inc. approached William White to request deferment for six months of the second installment of $25,000.00, due September 23, 1971 upon the remaining $161,000.00 of secured bonds held by White. The solvency of the bankrupt was discussed with White, although that term was not used. White was told by Mr. O'Neill and Mr. Carr that bankrupt had "cash flow problems" and that attempts were being made to sell and re-finance properties. Upon hearing this, he demanded additional security upon the entire bond debt of $161,000.00 in return for a six month deferment of payment of the $25,000.00 principal installment. The initial offer of additional security was rejected by White, upon advice of counsel because of the extensive debt encumbering the real properties offered as additional security for White's bonds. During this period, Mr. White attempted to get information from Virginia National Bank as to the financial condition of O'Neill Enterprises, Inc., but neither the bank nor its officers gave any information other than that O'Neill Enterprises had commitments with the bank.

After several meetings over a period of weeks between White, his attorney and officers and the attorney for the bankrupt, it was agreed to make the subordinate deed of trust, which is in controversy in the present case, additional security for White's entire bond holding of $161,000.00 in consideration for the six-month deferment of payment of the second installment of $25,000.00, due on September 23, 1971. The $25,000.00 payment was deferred until March 23, 1972. The deed of trust, dated September 23, 1971, conveying certain properties to Edward Deets and George Gilmer (White's trustees) as additional security, was perfected on October 7, 1971 by recording in the Corporation Court of the City of Charlottesville. On December 30, 1971, an involuntary petition of bankruptcy was filed with

this court. In an answer filed on January 7, 1972, the debtor O'Neill Enterprises, Inc., admitted its insolvency and joined in the prayer for its adjudication as a bankrupt. An order of adjudication of bankruptcy was entered on January 7, 1972. Promptly thereafter voluntary petitions in bankruptcy were filed on behalf of three of the related corporations owned by Frank O'Neill and individually by Frank O'Neill and his wife Caroline P. O'Neill.

A hearing was held on November 8, 1972, on the question before the court today, whether the deed of trust of additional security constituted a voidable preference. Judge Hickson held that it did, and by order dated December 20, 1972, upheld the trustee's determination that the deed of trust, dated September 23, 1971, was a voidable preference and ordered that it be declared null and void and the real estate revert to the bankrupt estate.

## CONCLUSIONS OF LAW

The court will now consider the legal issues involved.

1) Was the transfer of the security made for the benefit of the creditor, William White, or on account of an antecedent debt? Petitioner White contends that the six month extension of the payment date of the $25,000.00 principal installment given in return for additional security (deed of trust) was in the nature of a forbearance. Forbearance has been defined as "sufficient consideration for a promise" and "forbearance from exercising a right or doing an act which one has a right to do is sufficient consideration where such forbearance is requested as consideration . . . ." 17 American Jurisprudence Contracts § 114 (1964). However, the court notes that conveyance of the property by deed of trust dated September 23, 1971 was made not only to secure the $25,000.00 deferred payment but to secure the entire principal indebtedness of $161,000.00. In the deed of trust itself, recorded in Deed Book 330, page 549 in the Clerk's Office of the Char-

lottesville City Corporation Court, it is stated:

> . . . O'Neill Enterprises, Inc., as *additional security for the aforesaid indebtedness of $161,000.00* secured by said deed of trust dated May 21, 1970, recorded in said City Clerk's Office in D. B. 316, p. 393, does hereby GRANT and CONVEY with GENERAL WARRANTY OF TITLE unto Edward H. Deets, Jr. and George Gilmer, Trustees, the following described properties: . . . . (Emphasis added.)

The concluding provision of the deed of trust states:

> The property conveyed by this instrument is conveyed solely as additional security for the position of said indebtedness evidenced by bonds held by William H. White, III, or assigns.

Therefore, the deed of trust was offered as additional security for the entire principal indebtedness of $161,000.00 which existed prior to the recordation of the deed of trust and was not offered solely for the forbearance.

■ The court also notes that contemporaneous consideration for the purpose of determining the existence of a voidable preference is measured in terms of the fair equivalent which comes back into the bankrupt estate in exchange for that which leaves it. To the extent that an estate is depleted as the result of a transfer, where the other elements of a voidable preference are present, that transfer is preferential. Virginia National Bank v. Woodson, 329 F.2d 836 (4th Cir. 1964); Aulick v. Largent, 295 F.2d 41 (4th Cir. 1961).

■ In this case, the bankrupt estate was depleted to the extent that the properties assigned in the September 23, 1971 deed of trust to the trustees of William White were not available after bankruptcy for distribution to the other creditors of the bankrupt estate. The deed of trust brought nothing back into the estate which may be termed the "fair equivalent" of the properties which left the estate. Whatever the other intentions of the parties may have

been, the effect of the transfer enabled the petitioner to receive a greater proportion of his claim than another creditor of the same class. Therefore, the transfer may be properly termed to have been made for the benefit of the creditor. The court further notes that since the additional security was offered not merely for the deferred debt but for the entire pre-existing indebtedness, it was a transfer on account of an antecedent debt. Therefore, the transfer constitutes a preference, within the meaning of § 60 of the Bankruptcy Act, "a preference is a transfer . . . of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, . . ."

2) Was O'Neill Enterprises, Inc. insolvent on October 7, 1971, the date of perfection of the transfer? Section One (19) of the Bankruptcy Act defines insolvency as follows: "A person shall be deemed insolvent within the provisions of this Act whenever the aggregate of his property, * * *, shall not at a fair valuation be sufficient in amount to pay his debts." Petitioner admits that the bankrupt was in a "very tight cash position," but states that as of the date of bankruptcy the value of the assets exceeded the total liabilities by more than $1,500,000.00. This he bases on a Statement of Affairs of Bankrupt, prepared by Edward H. Deets, attorney for the bankrupt, dated January 31, 1972, and based on appraisals by qualified appraisers. Petitioner contends that "this statement presents the only true picture of the financial condition of the bankrupt," and dismisses as inaccurate two balance sheets of the bankrupt, prepared on December 31, 1970 and December 31, 1971 for the trustee in bankruptcy by Joseph J. Saunders, III and Robert Dale Carter, Certified Public Accountants. Petitioner contends that the balance sheets do not reflect true financial conditions because they do not account for appreciation in value of the assets.

The court notes that O'Neill Enterprises, Inc., was the central entity of a diversified business complex which included, among other things, commercial construction, operation of a shopping center, the erection and organization of a medical center, the fabrication of modular buildings and parts, and the operation of a real estate and insurance agency. These several corporate entities, three of which besides O'Neill Enterprises, Inc. are now bankrupt, had common officers and directors. The evidence indicates that it was common practice to commingle and interchange funds and property as the exigencies of the companies' fortunes required. As Edward Deets, the bankrupt's attorney stated in testimony at the hearing, if Mr. White had been paid $25,000.00 when the installment came due, the money would have come as a result of "robbing Peter to pay Paul." The court does not find it surprising that the referee found the consolidated balance sheets prepared by competent, independent accountants and introduced into evidence by the trustee, to be the most reliable evidence bearing upon the bankrupt's solvency. The balance sheets show a substantial deficit at the end of 1970 and an even greater deficit at the end of 1971. The petitioner prefers to rely on the bankrupt's schedules prepared by the bankrupt's attorney. If they are reliable, then the bankrupt was not insolvent. The court then must ask why the bankrupt, represented by counsel, admitted the allegation of insolvency contained in the involuntary petition filed against him.

The evidence produced during the hearing shows that during 1970 and 1971, Barracks Road Shopping Center was sold largely for the assumption of debt and leased back from the purchaser, only to be lost completely by reason of default two months after recordation of Mr. White's deed of trust. Several valuable properties were reconveyed because of bankrupt's inability to pay the balance of the purchase price. Frustrating efforts were made to sell the property in 1971 without effect. As Mr. David Carr, vice-president of the bankrupt,

stated in his deposition, "We—O'Neill Enterprises, Inc. attempted to sell just about every piece of property which it owned. . . . I kind of had the feeling that people were waiting to see what was going to happen—maybe the price of the property would come tumbling down or something . . . . there were a lot of rumors, . . . ." (pp. 15–16.) Although some property was sold (Shulford Mills) it did not seem to alleviate the critical cash shortage.

■ The key to the bankruptcy definition of insolvency is the phrase "fair valuation" with respect to the values to be assigned to the debtor's assets. Most judicial decisions dealing with the meaning of "fair valuation" emphasize the importance of the element of ready availability of assets, or capability of converting them into cash within a reasonable time, for payment of debts. This court accepts the referee's definition, as outlined in In re Schindler, 223 F.Supp. 512 (E.D.Mo.1963):

'Fair valuation' within meaning of Bankruptcy Act means value that can be made promptly effective by owner of property to pay his debts and is value that could be available for payment of debts within reasonable time by willing seller and willing buyer who was able to buy.

The court will now seek to apply the "balance sheet test" to determine whether or not at a fair valuation assets exceeded liabilities at the time of perfection of the transfer. For the O'Neill properties there seemed to be few willing and capable buyers except the bankrupt's wholly-owned subsidiary corporations, the transfer to which resulted in no profit to the debtor but merely enabled it to increase its indebtedness by further borrowing. As Mr. White stated at the hearing, the market conditions for sale of the real properties deteriorated in mid-1969 and continually worsened through 1970 and 1971. The court notes that the best test for determining the element of availability within a reasonable time of an asset for the payment of debts is its acceptance or rejection in the market. Based upon failure of his efforts to sell the properties of his various enterprises during 1970 and 1971, Mr. Frank A. O'Neill, president of bankrupt, testified at the November 8, 1972 hearing that two additional years would be required to sell the properties. This court agrees with the referee's determination that four years effort is not a reasonable time to make available the value of the real estate for the payment of debts. The court further agrees with the referee that the schedules filed by the bankrupt are not acceptable evidence of the debtor's solvency. Any appraisals made of the O'Neill properties, even if accurate at the time of the appraisals, would necessarily change with a deterioration of market conditions from 1969 to 1971. The property would therefore be worth less on the open market than its appraised value. This may explain the inability of the bankrupt to sell its real estate for a period of two years preceding bankruptcy, if it relied on the appraised values.

■ The balance sheets prepared by accountants for the trustee of the bankrupt established that bankrupt was insolvent on December 30, 1971. The court finds that the balance sheets are acceptable evidence to establish the insolvency of the bankrupt on October 7, 1971, when the deed of trust was recorded. Feldman v. Capitol Piece Dye Works, Inc., 185 F.Supp. 426 (S.D.N.Y.1960), reversed on other grounds, 293 F.2d 889 (2d Cir. 1961), cert. denied 368 U.S. 948, 82 S.Ct. 389, 7 L.Ed.2d 344.

Counsel for the trustee states that evidence of insolvency is reflected in the answers of bankrupt's president, Frank A. O'Neill, during the hearing, and the transfers which occurred during the year preceding bankruptcy. The great preponderance of transfers was in the form of deeds of trust representing heavy additional borrowing and the substitution of collateral with respect to prior loans in order to facilitate further borrowing. One such transfer, outlined

in bankrupt's Statement of Affairs, was a conveyance from bankrupt to its wholly owned subsidiary, Building Systems, Inc., now also a bankrupt, of various parcels of land valued by bankrupt at an aggregate of $10,666,523.00, offered as consideration for the assumption of certain debts by the grantee and the issuance by the grantee of debentures for the balance. Part of the land so transferred, known as the Willoughby tract, was purchased by the bankrupt in 1969 for $1,230,000.00, but for the purposes of the conveyance made to Building Systems, only part of the original purchase of Willoughby was valued at $7,832,750.-00. The evidence shows that this deed was never recorded because neither O'Neill Enterprises nor Building Systems, Inc. had sufficient funds to pay the recordation costs. This obvious inflation of values was admitted by Mr. O'Neill to have been for the purpose of trying to effect a merger with a Florida corporation.

The court believes that this same kind of inflationary practice is reflected in the bankrupt's schedule of assets. The values shown in the schedule were in many instances taken from outdated appraisals. The court therefore relies upon the balance sheets prepared by competent accountants at the trustee's direction. These balance sheets, along with the above-mentioned evidence of the desperate straits of the O'Neill Enterprises, Inc. and related organizations in 1971, establish to this court's satisfaction that O'Neill Enterprises, Inc. was insolvent on October 7, 1971, the date of perfection of the transfer.

3) Did the creditor, William White, have reasonable cause to believe that O'Neill Enterprises, Inc. was insolvent on the date of the transfer?

■■ The court notes that it is the *cause* to believe and not the belief itself that is determinative and proof of actual knowledge of insolvency on the part of the creditor is not necessary. This has been explained in 3 Collier on Bankruptcy § 60.53 (14th Ed.) at 1057ff:

Knowledge of insolvency is not necessary, nor even actual belief thereof; all that is required is a reasonable cause to believe that the debtor was insolvent at the time of the preferential transfer. A creditor has reasonable cause to believe that a debtor is insolvent when such a state of facts if brought to the creditor's notice, respecting the affairs and pecuniary condition of the debtor, as would lead a prudent business person to the conclusion that the debtor is insolvent. Of course, a creditor may not wilfully close his eyes that he might remain in ignorance of his debtor's condition. On the contrary, where circumstances are such as would incite a man of ordinary prudence to make inquiry, the creditor is chargeable with notice of all facts which a reasonably diligent inquiry would have disclosed. In such case, an inquiry of the debtor alone is generally insufficient, where his answer, under the circumstances, could readily have been found to be untrue. As a matter of fact, it is the creditor's cause for belief and not the debtor's knowledge, or lack of it, that is important. And if the creditor fails to make an inquiry when he has a duty to do so, he will be charged with all the knowledge which he would have acquired had he conducted such an investigation. (Footnotes and citations omitted).

In determining whether Mr. White had reasonable cause to believe that O'Neill Enterprises, Inc., was insolvent, the court must look at the facts. Mr. White was told of the "desperate" cash situation by both Mr. Carr, vice-president of O'Neill Enterprises, Inc., and Mr. Deets, bankrupt's attorney. In his own testimony, he admitted that he knew that the company was having "cash flow problems" and was having trouble meeting its obligations. He was also informed by Mr. Deets during the negotiations for the defendant that ". . . we were in a very difficult cash situation and unless we did get

time, the values of Mr. O'Neill's assets would not be realized, that we needed time to realize these values that we talked about." When extension was requested on the second $25,000.00 principal payment, Mr. White required additional security for the entire debt of $161,000.00. He rejected the first property that was offered to him as additional security and, with the aid of his counsel, selected other property in which there was an equity. The court assumes that Mr. White went to the records to determine the state of the liens on the respective properties, and could not have failed to observe the encumbered condition of the holdings of O'Neill Enterprises, Inc. and the juggling of deeds of trust in order to facilitate greater borrowing. He also would have discovered that Virginia National Bank had recently recorded a "wrap-around" deed of trust on a substantial part of the more valuable assets of bankrupt as additional security for its aggregate multimillion dollar loan. He would have discovered that during 1971, as disclosed on the debtor's Statement of Affairs, some ten mechanic's liens were filed against the properties of the debtor, ranging from insignificant amounts to secure repairs to amount of several thousand dollars.

The courts have often said that a creditor, thus alerted, cannot shut his eyes and claim that he did not have reasonable cause to believe that the debtor was insolvent. In re Schindler, supra, 223 F.Supp. at 530. While Mr. White testified that he requested a financial statement of the company, he did not insist upon it and proceeded to consummate the transaction without ever having seen a financial statement. Had he insisted upon it, he would have received a consolidated balance sheet and other financial data covering the year 1970 showing a substantial deficit at the end

of that year. There were also three other banks in Charlottesville as well as a number of out-of-town banks and lending institutions with which the company was doing business. Petitioner could have obtained a list of these and the identity of them from the clerk's offices. While Virginia National Bank refused to disclose information concerning bankrupt's financial affairs, the court feels that some such information, upon inquiry, would have been forthcoming from other lending institutions with which bankrupt dealt.

The testimony indicates that all of the parties to the transaction—Mr. Carr, Mr. White, Mr. Deets and Mr. O'Neill—felt that the only hope for salvaging O'Neill Enterprises, Inc., was the success of the merger with a Florida corporation, (EVESCO). Based upon this hope, Mr. White took a chance with full knowledge that the odds were against him. Before the merger could be successfully consummated, a petition for involuntary bankruptcy was filed with this court, and O'Neill Enterprises, Inc., shortly thereafter admitted its insolvency. The court, on the basis of the facts uncovered in the bankruptcy proceedings, finds that the petitioner, Mr. White, had reasonable cause to believe that O'Neill Enterprises, Inc., was insolvent on October 7, 1971, the date of perfection of the transfer.

Accordingly, for the above-stated reasons, the court finds the said deed of trust given as additional security for the antecedent debt held by petitioner White to be a voidable preference within the meaning of § 60(b) of the Bankruptcy Act.

It is therefore adjudged and ordered that the referee's order of December 20, 1972 be affirmed and the petition for review be dismissed.