In re D G & ASSOCIATES, INC., D G & Associates, J & E Associates, and Ten-Vol Sales, Bankrupt.

C. Kenneth STILL, Trustee, Plaintiff,

v.

CITY BANK AND TRUST COMPANY, Defendant.

Bankruptcy No. BK–1–79–01289.
Adv. No. 1–80–30.

United States Bankruptcy Court,
E. D. Tennessee.

April 13, 1981.

A. Alexander Taylor, II, Chattanooga, Tenn., for plaintiff.

Harold N. Roney, McMinnville, Tenn., for defendant.

## MEMORANDUM

RALPH H. KELLEY, Bankruptcy Judge.

The trustee brought this suit against the bank to recover two allegedly preferential transfers.

The transfers were two payments of interest due to the bank on two promissory notes executed by Ten-Vol Sales or D G & Associates in return for loans from the bank. The bankrupt is a successor to Ten-Vol Sales Company.

The payments were $423.51 paid on June 4, 1979, and $450.00 paid on July 23, 1979. The company filed its petition in bankruptcy on September 12, 1979.

In May, 1977 Ten-Vol Sales Company or Ten-Vol and Associates borrowed $10,000 from the bank and executed a note for repayment. The note was due in 90 days.

In July, 1978, Ten-Vol or its successor, D G & Associates, arranged for a $50,000 loan or line of credit from the bank. The loan was to enable the company to fill a purchase order from a New Orleans buyer. As collateral for the loan the company assigned its right to payment from the buyer. The total purchase price was about $119,000.

The promissory note executed in connection with the loan was due in 63 days. It

was to be paid on completion of the contract with the buyer. The company had bought the goods and was in the process of shipping them when it discovered that the purchase order was no good.

William Earl Dove was a principal in the business and dealt with the bank in obtaining both loans. He is also a co-signer of the promissory notes. When he learned that the purchase order was not any good, he immediately went to the bank and told Mr. Golden. Mr. Golden suggested that he just hold on and see if he could sell the merchandise.

The business continued to sell the merchandise but no one bought any large quantities. According to Mr. Dove, the business was on the verge of going under when the first payment in question was made, and he had told Mr. Golden that it was bad. The business never paid any principal on either note. It made interest payments fairly regularly so that the notes were renewed. Mr. Dove testified that he didn't receive any late notices but was called about a dozen times, and each time he told Mr. Golden about the condition of the business.

The bank called only one witness, Edmond D. Busek, a vice-president of the bank. He testified that nine interest payments were made on the first note and five were made on the second note.

Judging from the time of the payments, the regular renewals, and the number of interest payments made, the court concludes that the payments in question were made about the time of maturity of the notes and for their renewal.

### Discussion

█ The trustee cannot recover unless at the time of payment the debtor was insolvent. 11 U.S.C. § 96(a) (1976); Bankruptcy Act § 60(a). Mr. Dove did not directly answer the question of whether the business's liabilities were greater than its assets at the time of the payments. His other testimony is substantially to the effect that the business was insolvent at the time. It was bad, about to go under, and didn't get any better near the end, i. e., shortly before bankruptcy. It is evident that the business owed the bank alone $60,000.00 on which it had been unable to make payments on principal for a considerable length of time. The business acquired the goods to be sold under the contract that became worthless but lost the expected $119,000 purchase price. The court concludes that the business was insolvent at the time of the payments in question.

The trustee cannot recover the payments unless at the time they were made the bank had reasonable cause to believe the debtor was insolvent. 11 U.S.C. § 96(b) (1976); Bankruptcy Act § 60(b). The court believes that the bank had reasonable cause to believe the debtor was insolvent.

Reasonable cause exists if the creditor knew of facts sufficient to lead a prudent businessman to inquire and a reasonably diligent inquiry would have revealed the insolvency or facts from which insolvency would be apparent. 3 Collier on Bankruptcy ¶ 60.53 at 1057–1066.1 (14th ed. 1975). In this case the bank immediately learned of the failure of the contract that secured and was meant to pay the $50,000 loan. The bank had received only interest payments on a $10,000 loan made in mid-1977. It received only interest payments on the $50,000 loan. Mr. Dove talked with Mr. Golden several times and kept him apprised of the business's worsening position. In such circumstances the bank is not absolved because it only went along with the business in the hope that things would get better. No doubt that is often the case when a lender knows the borrower is insolvent or knows facts that should lead it to discover the borrower's insolvency. The preference provisions of the bankruptcy law are based on the policy of equality of distribution. 3 Collier on Bankruptcy ¶ 60.01 (14th ed. 1975). That policy controls even if the preferred creditor refrained from earnest collection efforts in the hope that the borrower would survive its difficulties and pay its debts. In this case the facts were sufficient to lead the bank, if it acted prudently and conducted a reasonably diligent investigation, to the conclusion that the

business was insolvent at the time of the payments. See, e. g., *Eureka-Carlisle Company v. Rottman*, 398 F.2d 1015 (10th Cir. 1968); *In re Cichanowicz*, 247 F.Supp. 975 (E.D.N.Y.1965) aff'd per curiam 353 F.2d 538 (2d Cir. 1965).

The bank also contends that the interest was not an antecedent debt. The court must emphasize that since the collateral proved valueless neither loan was secured.

Whether the argument is good depends first on the meaning of antecedent debt. The discussion in Collier on Bankruptcy says little about when a debt comes into existence. Most of the discussion focuses on whether the challenged transfer resulted in a diminution of the bankrupt's estate or on whether the bankrupt received present consideration in exchange for the transfer. 3 Collier on Bankruptcy ¶¶ 60.19–60.29 (14th ed. 1975).

One group of the discussed cases is not relevant to the question in this proceeding. Those are cases where the debt was clearly antecedent but the transfer on account of it did not result in a diminution of the assets available to other like creditors. In such cases the creditor could not have been preferred over other creditors.

Most of the remaining cases deal with whether in exchange for the transfer the creditor gave the bankrupt new consideration at the time or thereafter. 3 Collier on Bankruptcy ¶ 60.19 (14th ed. 1975).[1] It is important to distinguish the cases in this group where there clearly was no diminution of the estate (no preferment) because the new consideration added a valuable, identifiable asset, e. g., money lent or goods delivered. All that is required is that the bankrupt receive something of value contemporaneously with and in exchange for the transfer. For example, in many cases it would be impossible to determine accurately how a bankrupt employer's assets were increased by the employees' labor. But labor is certainly a thing of value. Payment

of current wages is not payment of an antecedent debt.

A transfer made in return for a consideration which the transferor receives at the same time or thereafter . . . is not a preference because not made "for or on account of an antecedent debt." Thus the mere exchange of property of equal value . . . does not constitute a preference. And where a creditor takes and perfects security from an insolvent debtor, even within the four months' period, he does not receive a voidable preference if the consideration was a loan or advance of money or property to the bankrupt, or a promise (later actually fulfilled) of future credit, made at the same time the security transfer was perfected . . . . In the same category are also advancements upon security for current business operations, or expenses. Likewise, payments of currently earned wages are not preferential in this respect, inasmuch as the labor performed constitutes a present consideration; and current payments of rent may be said to rest on a present consideration.

3 Collier on Bankruptcy ¶ 60.19 at 847–853 (14th ed. 1975).

It is apparent that whether a debt was antecedent usually depends on when the bankrupt received the consideration giving rise to the debt.[2] If the transfer was in return for consideration then or thereafter received from the creditor, then the transfer was not on account of an antecedent debt.

That leads the court to the problem in this case. What consideration did the bankrupt receive in return for the payments of interest?

■ Arguably renewal of the notes was new consideration given in return for the interest payments. But the renewals did not give the bankrupt any more money. The bank did forbear from collecting the principal, which is the same as saying the

---

1. The net result cases involve the giving of new value by the creditor but not directly in exchange for the challenged transfers. 3 Collier on Bankruptcy ¶ 60.23 at 876.1 (14th ed. 1975).

2. As to debts for tortious injuries another rule is necessary.

bankrupt was given continued use of the principal. But if the bank had attempted to collect, its collections would have been in the preference period and recoverable by the trustee. *Michigan Fire & Marine Ins. Co. v. Genie Craft Corp.*, 195 F.Supp. 222, 224 (D.Md.1961). The bankrupt's future use of the money or the bank's forbearance to collect the principal were not new consideration that made the interest payments nonpreferential. See also *In re O'Neill Enterprises*, 359 F.Supp. 940 (W.D.Va.1973).

The more difficult question is whether the bankrupt's past use of the money was contemporaneous consideration. For the purpose of the preference statute the court should look first to when the bankrupt received the consideration free of any rights in the creditor. *National City Bank of New York v. Hotchkiss*, 231 U.S. 50, 34 S.Ct. 20, 58 L.Ed. 115 (1913); *Stock Clearing Corp., Inc. v. Weis Securities, Inc.*, 542 F.2d 840 (2d Cir. 1976) (*In re Weis Securities, Inc.*)

The question is complicated in the case of a loan because the consideration given by the lender is not just money but time. The borrower receives the money and the right not to repay it for the agreed time and in return promises to pay a charge, interest, based on the amount of money lent and the time for which it is lent.

The question is further complicated because of the meaning of consideration. Consideration may be a promise. At the last renewal of the notes *before* the payments in question, the bank promised not to demand payment until the notes again came due. The court could say the consideration for the payments in question passed then because the bankrupt became entitled to the time during which the interest accrued.

On the other hand, each day that a borrower does not have to repay the loan is of value. Arguably the consideration or value is given only as the promised time elapses. On that theory, the payment of interest as it accrues is payment for consideration contemporaneously received. But to say that the value is given only as the time elapses assumes the lender has control after the

money has passed to the borrower. Once the lender has made the advance without security and agreed to payment at a later date, it cannot cut short the time unless there is some other default, and if it could there would be no specific property it could retake.

Likewise, payment of interest on a loan differs from the payment of rent for the use of a building, machinery, or the like. If the lessee doesn't pay the rent, there is something the lessor can retake. Once a lender makes an unsecured loan it is merely an unsecured creditor. There is no specific property it can retake if the borrower fails to pay.

Furthermore, the use of money over time and the use of a building or a machine are not alike. Once a borrower has the money he has all its use. The postponement of repayment usually gives the borrower time rather than actual use. For essentially the same reason interest is unlike wages. An employee cannot retake his labor but the labor was given when done. It was consideration other than postponement of the time for payment.

There is one other question as to whether interest is an antecedent debt. The lender and borrower may agree that the borrower will be liable only for the earned interest and will pay it as it accrues. In that case it can be argued that even if the right to the time is given when the loan is made, the interest debt comes into existence only as the time passes.

The argument would be more convincing in a case where the borrower was to pay the interest as it accrued before maturity of the note. But the argument is doubtful in any case where the debt is unsecured. In this case each note provided for a rebate of unearned finance charges when the principal was paid. The provisions may contemplate transactions with installment payments. They may also mean that the bankrupt would have been entitled to a deduction of unearned interest if it had paid the principal before maturity.

In any event the court does not think the provisions save the interest in question from being antecedent debt. A prepayment clause allows the borrower a deduction of interest if he pays the principal debt before maturity of the note. *Davis v. Hinton*, 519 S.W.2d 776 (Tenn.1975). That is not the same as making the borrower liable only for the interest that accrues as it accrues.

These notes were for principal and interest at maturity. The payments were interest due at maturity when the principal was also due, rather than interest accruing during the terms of the notes. The bank gave up the consideration, the time and the money, when the notes were last renewed before the payments in question. The situation was essentially like the incurrence of one debt, principal and interest, to be paid later. The court holds that the interest was antecedent debt.

The trustee is therefore entitled to recover the two payments as preferential transfers. An order will be entered accordingly.

This memorandum constitutes findings of fact and conclusions of law. Bankruptcy Rule 752.