[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————

No. 05-10894

————

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 8, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 03-62225-CV-JIC

DRESDNER BANK AG,
Dresdner Bank AG in Hamburg,
NORDDEUTSCHE LANDESBANK-GIROZENTRALE,
KREDITANSTALT FUR,

                                                  Plaintiffs-Appellees,

BLOHM AND VOSS GMBH, et al.,

                                                  Intervenors-Plaintiffs,

EKO-ELDA ANONYMI VIOMICHANIKI,
EMPORIKI ETERIA PETRELAJOEIDON,

                                                  Intervenors-Plaintiffs
                                                  Appellants,

                              versus

M/V OLYMPIA VOYAGER, a 157.90 meter Blohm Voss GmbH motor
vessel, Hull No. 961, Greek official number 10750, her engines, tackle
equipment, rigging, dinghies, furniture, appurtenances, etc., in rem,
and Olympic World Cruises Inc. her owner, in personam,

                                                  Defendant.

Appeal from the United States District Court
for the Southern District of Florida

**(September 8, 2006)**

Before DUBINA, MARCUS and COX, Circuit Judges.

DUBINA, Circuit Judge:

In this admiralty appeal, we consider whether the district court properly dismissed the tort and contract claims of an intervening plaintiff, Greek petroleum company Eko-Elda Anonymi Viomichaniki, Emporiki Eteria Petrelajoeidon Viomichaniki ("Eko-Elda"), seeking to enforce a lien against a cruise ship being sold in foreclosure by the holders of the ship's preferred mortgage. We conclude that the district court properly dismissed with prejudice Eko-Elda's *in rem* tort claims against the vessel for fraud in the inducement and negligent misrepresentation, but that the *in personam* breach of contract claim against the owner of the Vessel was due to be dismissed without prejudice. For the reasons discussed below, we affirm in part and reverse in part the district court's judgment.

## I. Introduction

This case is properly introduced by another opinion of this court, *Dresdner Bank AG v. M/V Olympia Voyager*, 446 F.3d 1377 (11th Cir. 2006), which involved the same overall foreclosure proceedings against the cruise vessel at issue in this appeal, but concerned the claim of a separate intervenor, Aktina Travel, S.A.:

> This appeal arises out of an action filed by Dresdner Bank AG in Hamburg, Kreditanstalt Fur Wiederaufbau, and Norddeutsche Landesbank-Girozentrale (collectively, "the Banks") to foreclose a preferred ship mortgage on a foreign vessel. The Banks filed a complaint in the Southern District of Florida *in rem* against the M/V Olympia Voyager ("the Vessel"), a Greek-flagged passenger cruise vessel, and *in personam* against Olympic World Cruises ("OWC"), the owner of the Vessel.
>
> The district court entered a default judgment of foreclosure against the Vessel and ordered it sold. Subsequently, numerous parties filed claims or motions to intervene to assert claims against the Vessel or the proceeds of its sale. In response to these claims and motions, the district court entered an order requiring the Banks to provide security for any claims found to be superior in priority to the preferred ship mortgage, and allowing the Banks to stand in the shoes of the Vessel to defend against all claimants asserting such priority.

*Id.* at 1379. On January 13, 2005, after a bench trial, the district court entered a final judgment dismissing, with prejudice, all the claims brought by Eko-Elda against the Vessel. Eko-Elda appeals.

## II. Background

3

Eko-Elda contracted with OWC to provide bunkers (marine fuel products and lubricants) to the Vessel in Greece. OWC fell behind in its payments for bunkers supplied to the Vessel in the amount of approximately $5.5 million. Eko-Elda threatened to cease supplying the Vessel with bunkers due to non-payment, but Royal Olympic Lines, Inc. and/or Royal Olympia Cruises (collectively, "ROC"), the operator of the Vessel, agreed that it would repay the $5.5 million debt owed by OWC in exchange for Eko-Elda continuing to supply the Vessel with bunkers so the Vessel could continue operating.

OWC ultimately filed for bankruptcy protection in the United States, and the Banks instituted the foreclosure proceedings on the Vessel at the root of this case. The Banks filed their Verified Complaint to Foreclose a Preferred Ship's Mortgage on December 16, 2003, and were awarded Final Judgment after Default against the vessel on March 19, 2004.

Eko-Elda filed a Motion to Intervene in the foreclosure proceedings on March 19, 2004, and the district court granted its motion on March 23. On March 24, Eko-Elda filed a Verified Intervening Complaint bringing claims for breach of contract against OWC *in personam*, and fraud in the inducement and negligent misrepresentation against the vessel *in rem*, alleging that ROC never intended to

4

repay the OWC's debt but made the promise in order to induce Eko-Elda to continue supplying the Vessel with bunkers.

To facilitate the sale of the Vessel in order to satisfy the judgment entered in favor of the Banks, the Banks filed a Stipulation with the court on March 24 whereby they would post security to satisfy any claims brought against the Vessel and reserve any defenses that would otherwise be available to the Vessel to defend against those claims. The court codified that Stipulation in an order on March 29, and the Banks subsequently contested Eko-Elda's claims against the Vessel.

The district court held that Greek law applied to Eko-Elda's claims. Further, it held that under Greek law no maritime lien arises in favor of Eko-Elda based on the alleged torts, and that any judgment obtained in Greece based upon a tort action would be subservient to the Banks' preferred ship mortgage. Accordingly, the court denied Eko-Elda's tort claims and dismissed them with prejudice. Further, the court found that the Banks only defended the Vessel *in rem*, and not OWC *in personam*, thus Eko-Elda's breach of contract claim against OWC *in personam* was due to be denied. The court also dismissed Eko-Elda's breach of contract claim with prejudice.

### III.  Issues

1. Whether the Banks lack standing to contest Eko-Elda's claims by virtue of failure to file a Supplemental Rule C(6)(b) verified statement of right or interest after Eko-Elda filed its *in rem* claims.

2. Whether Eko-Elda's *in rem* tort claims, even if proven, could ever rise to the level of maritime lien or subordinate the Banks' preferred ship mortgage lien.

3. Whether the altering of Eko-Elda's tort claims from a Supplemental Rule C action to a Supplemental Rule B action would have any legal effect.

4. Whether the district court erred in dismissing Eko-Elda's *in personam* breach of contract claim with prejudice.

## IV. Standards of Review

This court reviews the factual findings of a district court sitting without a jury in admiralty under the clearly erroneous standard, and its conclusions of law *de novo*. *Venus Lines Agency, Inc. v. CVG Int'l Am., Inc.*, 234 F.3d 1225, 1228 (11th Cir. 2000).

This court reviews a district court's decision to dismiss an action for abuse of discretion. *Goforth v. Owens*, 766 F.2d 1533, 1535 (11th Cir. 1985).

## V. Discussion

A. *Supplemental Rule C(6)(b)*

6

Eko-Elda argues that the Banks essentially lack standing, in that they are precluded from challenging the validity, priority, and amount of Eko-Elda's claims vis-a-vis the Banks' preferred ship mortgage because they did not file a verified statement of right or interest pursuant to Rule C(6)(b) of the Supplemental Rules for Certain Admiralty and Maritime Claims in response to Eko-Elda's *in rem* claims against the Vessel. The Banks contend that they satisfied the requirements of Supplemental Rule C(6)(b) by virtue of their initial Verified Complaint together with the March 19 Stipulation and subsequent court order.

Supplemental Rule C(6)(b)(i) provides that after execution of process for an *in rem* action, "a person who asserts a right of possession or any ownership interest in the property that is the subject of the action must file a verified statement of right or interest." Supplemental Rule C(6)(b)(ii) further provides that "the statement . . . must describe the interest in the property that supports the person's demand for its restitution or right to defend the action." Compliance with Supplemental Rule C(6) is obligatory in order for a party to have standing to challenge an *in rem* claim. *See United States v. Commodity Account No. 549 54930 at Saul Stone & Co.*, 219 F.3d 595, 597 (7th Cir. 2000).

Though the banks did not file a statement that specifically invoked Supplemental Rule C(6)(b) after Eko-Elda intervened to bring its *in rem* claims

7

against the Vessel, the Banks were clearly and strictly in compliance with the requirements and spirit of Supplemental Rule C(6)(b) by way of the Verified Complaint they had filed earlier in the same action. Their complaint, which initiated the current action and triggered the arrest of the Vessel, was a statement that fully comported with the requirements of Supplemental Rule C(6)(b) – it was a verified, clear statement of their right to demand restitution under the preferred ship mortgage. The case was still ongoing when Eko-Elda sought to intervene in the very same action, and all interested parties had access to the complaint and were fully on notice of the Banks' asserted interest in the property. Requiring the Banks to file a new verified statement comporting with Supplemental Rule C(6) every time a party intervened in the ongoing action would provide no new information to the parties, would serve no purpose, and would be unduly burdensome.

The Banks, as the original arresting plaintiffs who filed a verified complaint *in rem*, are not required to continually file duplicative statements of right or interest in the ongoing action, as their rights or interests in the seized property have already been established and verified by the court. Accordingly, we conclude that the Banks have standing to contest Eko-Elda's claims.

B. *Maritime Lien*

The district court found that Greek law should apply to Eko-Elda's *in rem* claims for fraud in the inducement and negligent misrepresentation. The court further held that, under Greek law, even if Eko-Elda was successful in pursuing its claims, it would not be entitled to a maritime lien to enforce its judgment against the Banks' preferred ship mortgage and thus would not be entitled to any recovery.[1] Accordingly, the court dismissed Eko-Elda's claims. Eko-Elda now argues that Greek law would allow a lien that could support a recovery.

The parties do not contest that Greek law applies to Eko-Elda's claims, and that Eko-Elda's claims, under Greek law, could not possibly give rise to a maritime lien. Eko-Elda, however, argues that the common law lien that could result from its claims would have priority over the Banks' preferred ship mortgage. Eko-Elda's argument fails because any non-maritime lien arising from its claims would be subordinate to a preferred ship mortgage.

Greek law provides that the law of the forum where the arrest proceedings occur governs the ranking of priorities among liens. The Vessel was arrested in the United States, therefore we look to United States laws to determine priority.

---

[1]When the Vessel was sold at the court-ordered auction, the Banks, who were the highest bidders, bid the amount of debt owed under the preferred ship mortgage. Accordingly, the proceeds of the auction are not sufficient to allow any recovery for liens that are lower in priority than the preferred ship mortgage.

Under the Commercial Instruments and Maritime Liens Act ("CIMLA"), 46 U.S.C. § 31301 *et seq.*, a "preferred mortgage lien . . . has priority over all claims against the vessel (except for expenses and fees allowed by the court, costs imposed by the court, and preferred maritime liens)." 46 U.S.C. § 31326(b)(1). Because Greek law determines that any possible lien held by Eko-Elda in relation to its tort claims would not be a maritime lien, United States law would not rank it higher in priority than the Banks' preferred ship mortgage. Accordingly, because there is no possible recovery for Eko-Elda's *in rem* tort claims, we conclude that the district court properly dismissed them.

C. *Conversion to a Rule B Action*

Eko-Elda alternatively asks this court to convert its claim under Supplemental Rule C to an action under Supplemental Rule B. Supplemental Rule B and C are procedural devices afforded to plaintiffs in order to secure a prejudgment writ of attachment over a defendant's piece of property, i.e. the Vessel. Supplemental Rule C, for *in rem* actions, requires the plaintiff to have a maritime lien it seeks to enforce. Supplemental Rule B, however, which is for *in personam* actions and is less stringent than Supplemental Rule C, allows the court to exert control over a defendant's property when the defendant cannot be found in the district but the property can.

As noted above, Eko-Elda's claims under Supplemental Rule C fail because they do not give rise to a maritime lien; hence, any possible award would be subordinate to the Banks' preferred ship mortgage and unrecoverable. Eko-Elda would fare no better under a Supplemental Rule B action. A Supplemental Rule B action is an *in personam* action that would give rise to, at most, an *in personam* lien claim – not a maritime lien. As such, the priority structure of CIMLA dictates that any such non-maritime lien is subordinate to the preferred ship mortgage and Eko-Elda would still be unable to recover anything. *See* 46 U.S.C. § 31326(b)(1).

Eko-Elda admits as much. However, Eko-Elda argues that this court, under the doctrine of equitable subordination, could make a superior ranking lien subordinate to a lesser lien based upon inequitable conduct of the superior lien holder. *See Wardley Int'l Bank, Inc. v. Nasipit Bay Vessel*, 841 F.2d 259, 263 (9th Cir. 1988). Eko-Elda claims that the Banks acted inequitably by failing to immediately declare default on the loan agreement and arrest the Vessel when OWC began having financial difficulties in June 2003. Instead, the Banks gave OWC more time, agreeing not to declare default until December 2003. Eko-Elda argues this resulted in OWC accruing more debts, including the additional debt owed to Eko-Elda for the supply of bunkers, and qualifies as inequitable conduct.

11

"Three types of inequitable conduct are sufficient to warrant subordination [of a lien]: (1) fraud, illegality, breach of fiduciary duties; (2) undercapitalization; and (3) claimant's use of the debtor as a mere instrumentality or alter ego." *Custom Fuel Servs., Inc. v. Lombas Indus., Inc.*, 805 F.2d 561, 566 (5th Cir. 1986) (internal quotation marks omitted). There is no indication here that the preferred ship mortgage was a sham, or that the Banks' actions qualified as inequitable under any of the above categories. The postponement of a declaration of default on a loan for a reasonable period of time, by itself, is insufficient to warrant equitable subordination of the Banks' preferred ship mortgage. Accordingly, we conclude that Eko-Elda's claims would fail under a Supplemental Rule B action as well.

D. *Dismissal of In Personam Claim*

In addition to the *in rem* tort claims against the Vessel, Eko-Elda also brought an *in personam* claim against OWC for breach of contract. Eko-Elda was never able to obtain service of process against OWC, and OWC never appeared in the action. That being the case, OWC was never a party subject to the jurisdiction of the district court. Thus, we conclude that the district court abused its discretion in dismissing Eko-Elda's breach of contract claim with prejudice *sua sponte*.

12

## VI.  Conclusion

As Greek law does not support a maritime lien for Eko-Elda's tort claims against the Vessel, Eko-Elda has no possibility of recovery in an action under either Supplemental Rule B or C.  Thus, the district court correctly dismissed Eko-Elda's claims for fraud in the inducement and negligent misrepresentation.  The district court, however, erred in dismissing with prejudice Eko-Elda's *in personam* breach of contract claim against OWC.  Accordingly, we affirm the district court's judgment as to Eko-Elda's *in rem* tort claims, reverse the district court's judgment as to Eko-Elda's *in personam* breach of contract claim, and remand this case for the district court to dismiss that claim without prejudice.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**