In re William Noah KNIGHT, Debtor.

Charles A. GOWER, Trustee, Plaintiff,

v.

HOTEL RAMADA OF NEVADA, d/b/a Tropicana Hotel and Country Club, Defendant.

Bankruptcy No. 84–40483–COL.
Adv. P. No. 86–4051–COL.

United States Bankruptcy Court,
M.D. Georgia,
Columbus Division.

Aug. 13, 1987.

---

Fife M. Whiteside, Columbus, Ga., for plaintiff.

Nolan B. Harmon, Atlanta, Ga., for defendant.

## MEMORANDUM OPINION

JOHN T. LANEY, III, Bankruptcy Judge.

The above-captioned Adversary Proceeding is before the Court on cross motions for summary judgment. The Trustee has objected to proofs of claim filed by a creditor, Hotel Ramada of Nevada, d/b/a Tropicana Hotel and Country Club (hereinafter "Tropicana"). The Trustee has also filed a four count counterclaim. The Trustee admits that Tropicana is entitled to summary judgment as to Counts One, Three and Four.

The remaining Count of the counterclaim, Count Two involves an alleged postpetition transfer in the amount of $5,000.00. The undisputed facts show that the Debtor owed a considerable amount to Tropicana as a result of gambling debts prior to filing a Chapter 11 petition, which was later converted to Chapter 7. While the case was pending under Chapter 11 the Debtor, without authorization from the Court, purchased two cashier's checks from a bank, each in the amount of $5,000.00. He then traveled to Nevada, where gambling is admittedly legal, and delivered these cashier's checks to Tropicana. By affidavit the Debtor contends that he paid these funds on his past due account with Tropicana, as a result of which he received new credit. Tropicana does not admit applying these funds to the past due account, but does admit receipt of the cashier's checks and contends that as a result of the receipt of the same, the Debtor was extended postpetition credit, presumably for further gambling. Apparently at the request of the Debtor the bank stopped payment on the cashier's checks. However, Tropicana either sued or threatened suit against the bank and settled for receipt of $5,000.00. It is this $5,000.00 which is in dispute in Count Two.

The Trustee contends that the $5,000.00 was a post petition transfer of funds of the estate out of the ordinary course of business which is avoidable by the Trustee under Section 549 of the Bankruptcy Code and recoverable under Section 550. Tropicana contends that since stop payment orders were honored on the cashier's checks it received no funds from the estate of the Debtor, but that the $5,000.00 it received was from the bank, a third party and therefore that it is not an avoidable postpetition transaction. Since the affidavit of the Debtor shows that the bank subsequently set off against funds in his account an amount of approximately $3,500.00, Tropicana contends that if it is liable its liability is limited to $3,500.00, the amount by which the estate was diminished.

First, with regard to the objection to the proofs of claim, the Court notes that Claims No. 1, 16, and 31 were filed by Tropicana. Each claim is for $40,000.00 and is concededly for gambling debts in-

curred by the Debtor prepetition. It is conceded that there is only one such pre-petition debt totalling $40,000.00 and that the other claims are duplicates. Since Claim No. 31 is the most complete and the Trustee has stipulated that it may be considered an amendment of one of the earlier claims which was filed before the bar date, objections to claims numbered 1 and 16 are sustained and said claims are stricken. Claim Number 31 is allowed and considered timely filed.

The Trustee argues that Tropicana's claim should be disallowed because of the public policy of Georgia against gambling. The pertinent provision of the Bankruptcy Code is Section 502(b), which provides in part that:

"... if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount except to the extent that—

(1) such claim is unenforceable against the debtor and property of the debtor, under any agreement *or applicable law* for a reason other than because such claim is contingent or unmatured...." (Emphasis added.)

The Trustee contends that "applicable law" refers to the law of the forum, which is Georgia. The Trustee contends that in a Georgia court, Georgia law would be applied and that Georgia has a strong public policy against enforcing gambling debts. The Trustee contends that even though the gambling debt would have been legally enforceable in Nevada, Georgia courts would not allow its enforcement in Georgia.

Tropicana responds that the "applicable law" referred to in Section 502(b) is the law of the state where the contract originated, to-wit Nevada. It relies on *In re Smith*, 66 B.R. 58 (Bankr.D.Md.1986). That case cited legislative history giving examples of applicable defenses which bear upon the execution, interpretation, and validity of the contract as indicating that Congress intended the phrase "applicable law" to be the place of the making of the contract, not of the forum, unless the parties have agreed to the contrary. *Ibid*, 59 (footnote), 61. The *Smith* decision was affirmed in an unreported decision by the District Court that did not reach the question of the meaning of the phrase "applicable law," since it held that the alternative ground of the holding that a Maryland court would enforce the gambling contract if it was legal where incurred was correct. Maryland has legalized various forms of gambling and has its own state lottery. (*In re Smith*, 77 B.R. 33 (D.C.Md.1987).

The Trustee cites a number of Georgia statutes that make gambling illegal, to-wit: O.C.G.A. Sections 16–12–21, 16–12–22, 16–12–23, 16–12–24, and 16–12–28. O.C.G.A. Section 13–8–2 provides in part:

"(a) A contract which is against the policy of the law cannot be enforced. Contracts deemed contrary to public policy include but are not limited to: * * * (4) Wagering contracts...."

O.C.G.A. Section 13–8–3 provides that gambling contracts are void and money paid or property delivered as consideration for gambling may be recovered.

The Trustee relies upon a diversity case from the United States District Court for the Southern District of Georgia, *Gulf Collateral, Inc. v. Morgan*, 415 F.Supp. 319 (1976). In that case, an action was brought to collect a gambling debt which arose in Nevada where gambling was legal. The debtor was granted summary judgment, Judge Lawrence holding that the public policy of Georgia rendered such obligations unenforceable in the state.

Tropicana argues that *Gulf Collateral* is not controlling because the public policy of Georgia has changed since 1976 and also because the Bankruptcy Court is not bound to apply the law of Georgia as was the District Court in the diversity action. In support of a change in public policy, Tropicana cites a 1977 law regulating and licensing nonprofit bingo games, codified as O.C.G.A. Sections 16–12–50 et seq. and a 1985 law allowing manufacturing, processing, selling, possessing or transporting equipment, devices and materials used in lotter-

ies conducted by other states, codified as O.C.G.A. Section 16–12–35.

The Supreme Court of the United States recognized in *Vanston Bondholders Protective Committee v. Greene*, 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162 (1946) that a Bankruptcy Court is not required to adjudicate controversies as if it were a state court in the state in which it sits. Instead, "bankruptcy courts must administer and enforce the Bankruptcy Act as interpreted by this Court in accordance with authority granted by Congress to determine how and what claims shall be allowed under equitable principles." *Ibid*, 329 U.S. at 162–63, 67 S.Ct. at 240.

■■■ This Court is not persuaded that the public policy of Georgia has been changed to the extent that a Georgia court or a Federal District Court in a diversity case would enforce a gambling obligation. The Georgia Court of Appeals, citing O.C.G.A. Section 13–8–2(a)(4), has recently stated in dicta that it is "fully aware that gambling is against the public policy of Georgia...." *Hargreaves v. Greate Bay Hotel & Casino*, 182 Ga.App. 852, 357 S.E.2d 305 (1987). However, this Court agrees with Judge Mannes in *In re Smith*, *supra*, that the phrase "applicable law" in Section 502(b) of the Bankruptcy Code means the place of making the contract, not the place of the forum, unless the contract provides to the contrary.

Therefore, Tropicana's proof of claim No. 31 is allowed and the Trustee's objection to the same is overruled.

■■■ With regard to Count Two of the counterclaim, the Court finds that the net result of the postpetition dealings between the Debtor and Tropicana was an unauthorized transfer of property of the estate in the net amount of $3,500.00. Even though Tropicana actually received $5,000.00 and even though such receipt was not the immediate result of the honoring of the postpetition unauthorized cashier's checks, the eventual result was that the estate was diminished by $3,500.00 as a result of a postpetition unauthorized transfer. This transfer may be avoided under Section 549 of the Bankruptcy Code and the Trustee

may recover that amount for the benefit of the estate under Section 550.

An order will be entered in accordance herewith.

### ORDER

In accordance with the Opinion of the Court rendered on today's date, IT IS ORDERED as follows:

(1) The Trustee's objections to claims Numbered 1 and 16 are sustained and said claims are disallowed.

(2) The Trustee's objection to Claim No. 31 of Hotel Ramada of Nevada, d/b/a Tropicana Hotel and Country Club ("Tropicana") is overruled and said claim is allowed as an unsecured claim, timely filed, in the amount of $40,000.00.

(3) Tropicana is granted summary judgment in its favor as to Counts One, Three and Four of the Trustee's counterclaim.

(4) The Trustee is granted judgment on Count Two of its counterclaim against Tropicana in the amount of $3,500.00, the Court finding that Tropicana received an unauthorized postpetition transfer from the Debtor in said amount and that said amount is recoverable in this action by the Trustee against Tropicana.

(5) Said judgment in favor of the Trustee and against Tropicana shall bear interest postjudgment at the rate of 6.98 per cent per annum.