627 So.2d 538 (1993)
Phil C. FROUG, Appellant,
v.
CARNIVAL LEISURE Industries, Ltd., Appellee.
No. 93-155.
District Court of Appeal of Florida, Third District.
November 9, 1993.
Rehearing Denied January 5, 1994.
Samuel Sheradsky, Coral Gables, for appellant.
Blackwell & Walker, and James E. Tribble, Miami, for appellee.
Robert A. Butterworth, Atty. Gen., Jonathan A. Glogau, Asst. Atty. Gen., and Bruce R. Meeks, Certified Legal Intern, for Atty. Gen. of Florida, as amicus curiae.
James C. Blecke, Miami, for the Bahamas, as amicus curiae.
Before JORGENSON, LEVY and GODERICH, JJ.
LEVY, Judge.
A debtor appeals an adverse final judgment for the collection of a gambling debt. We reverse because the underlying gambling debt is unenforceable in Florida as a matter of law.
Phil Froug borrowed $50,000 from Carnival Leisure Industries, Limited, with which to gamble at Carnival's Crystal Palace Casino in the Bahamas. Froug lost all $50,000 gambling, but failed to repay the loan. Carnival sought to collect the debt by filing suit against Froug in Dade Circuit Court. In defending the suit, Froug relied on Florida Statutes, Section 849.26 (1991), which states:
All promises, agreements, notes, bills, bonds or other contracts, mortgages or *539 other securities, when the whole or part of the consideration if for money or other valuable thing won or lost, laid, staked, betted or wagered in any gambling transaction whatsoever, regardless of its name or nature, whether heretofore prohibited or not, or for the repayment of money lent or advanced at the time of a gambling transaction for the purpose of being laid, betted, staked or wagered, are void and of no effect; provided, that this act shall not apply to wagering on pari-mutuels or any gambling transaction expressly authorized by law.
Carnival was allowed to recover the amount of the debt plus interest. Froug now appeals, and this case presents for our consideration, once again, the issue of whether a creditor can recover legally incurred casino gambling debts in Florida courts, or whether such a recovery is barred because of Section 849.26.
In interpreting Section 849.26, "Florida courts have consistently held that gambling obligations, even if valid in the state in which they were undertaken, are unenforceable in Florida as contrary to law and public policy." Barquin v. Flores, 459 So.2d 436, 436-37 (Fla. 3d DCA 1984). See § 849.26, Fla. Stat. (1991); Carp v. Florida Real Estate Commission, 211 So.2d 240, 241 (Fla. 3d DCA 1968), writ discharged as improvidently issued, 219 So.2d 427 (Fla. 1969); Dorado Beach Hotel Corp. v. Jernigan, 202 So.2d 830, 831 (Fla. 1st DCA 1967), appeal dismissed, 209 So.2d 669 (Fla. 1968); Young v. Sands, Inc., 122 So.2d 618, 619 (Fla. 3d DCA 1960). These authorities compel reversal of the judgment obtained below.
Despite this, Carnival argues that in the time since Barquin was decided, the electorate of Florida has adopted a state lottery, which demonstrates a change in the public policy of this state in favor of gambling. Carnival claims this change requires us to allow recovery of debts, such as the one at issue here, which are incurred in the course of legalized gambling. In making this argument, however, Carnival fails to acknowledge the many fundamental differences between a state run lottery and a privately operated casino. Moreover, Carnival overlooks the fact that the electorate expressly rejected casino gambling by a two-to-one margin on the very same ballot which approved the state lottery. See Proposed Constitutional Amendment No. 2, Official Ballot, General Election, November 4, 1986 (rejecting casino gambling 2,237,555 to 1,036,250). Consequently, we do not recognize any change in public policy which would lead us to recede from the language contained in Barquin.
Additionally, we note that the majority of American jurisdictions follow a protective policy, similar to that of Section 849.26. See Annotation, Law of Forum Against Wagering Transactions as Precluding Enforcement of Claim Based on Gambling Transactions Valid Under Applicable Foreign Law, 71 A.L.R.3d 178 (1976). Even the Bahamas protects its own citizens, by making it illegal for them to enter a casino. See Ch. 351, § 49, Statute Law of The Bahamas (Rev.Ed. 1988).
Reversed.