[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 05-10862
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 1, 2006
THOMAS K. KAHN

D. C. Docket No. 03-62225 CV-JIC

DRESDNER BANK AG, Dresdner Bank AG in Hamburg,
NORDDEUTSCHE LANDESBANK-GIROZENTRALE
KREDITANSTALT FUR,

Plaintiffs-Cross-
Defendants-Appellants,

BLOHM AND VOSS GMBH, et al.,

Intervenor-Plaintiffs,

AKTINA TRAVEL, S.A.,

Intervenor-Plaintiff-
Appellee,

MONACO TELECOM INTERNATIONAL,

Intervenor-Plaintiff-
Cross-Claimant,

versus

M/V OLYMPIA VOYAGER, a 157.90 meter Blohm
Voss GmbH motor vessel, Hull No. 961, Greek official
number 10750, her engines, tackle equipment, rigging,

dinghies, furniture, appurtenances, etc., in rem,
and Olympic World Cruises Inc., her owner, in personam,

Defendant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

**(May 1, 2006)**

Before DUBINA, MARCUS and COX, Circuit Judges.

PER CURIAM:

In this admiralty appeal, we consider whether United States law was properly applied to govern a transaction between a Liberian shipowner and a Greek travel agency for travel services benefitting a Greek-flagged cruise vessel while it was in a United States port. We find that Greek law–not United States law–should have been applied. Thus, we reverse.

## I. Introduction

This appeal arises out of an action filed by Dresdner Bank AG in Hamburg, Kreditandstalt Fur Wiederaufbau, and Norddeutsche Landesbank-Girozentrale (collectively, "the Banks") to foreclose a preferred ship mortgage on a foreign vessel. The Banks filed a complaint in the Southern District of Florida in rem

2

against the M/V Olympia Voyager ("the Vessel"), a Greek-flagged passenger cruise vessel, and in personam against Olympic World Cruises ("OWC"), the owner of the Vessel.

The district court entered a default judgment of foreclosure against the Vessel and ordered it sold. Subsequently, numerous parties filed claims or motions to intervene to assert claims against the Vessel or the proceeds of its sale. In response to these claims and motions, the district court entered an order requiring the Banks to provide security for any claims found to be superior in priority to the preferred ship mortgage, and allowing the Banks to stand in the shoes of the Vessel to defend against all claimants asserting such priority. On January 13, 2005, the district court entered a final judgment in favor of Aktina Travel, S.A. ("Aktina") on its claim against the Vessel. The Banks appeal.

## II. Background

Aktina is a Greek travel agency, which contracted with the operators of the Vessel to provide airline tickets for crew members to use to travel to and from the United States, either before boarding or after disembarking the Vessel. The parties contracted in Greece, and Aktina provided the travel arrangements from Greece by telephone and other electronic means. Aktina filed a motion to intervene in this action, claiming that it was entitled to a maritime lien under the Commercial

3

Instruments and Maritime Liens Act ("CIMLA"), 46 U.S.C. § 31301 *et seq.*, which grants priority to creditors holding maritime liens for necessaries provided in the United States over those holding preferred mortgages on foreign vessels. *See* 46 U.S.C. §31326.

No written agreement between the parties existed, so the district court engaged in a choice-of-law analysis prior to determining the existence of a maritime lien under CIMLA. The court first determined that a conflict existed between United States law, which would afford a maritime lien to Aktina, and Greek law, which would not. Next, the court applied the factors laid out in *Gulf Trading & Transport Co. v. The Vessel Hoegh Shield*, 658 F.2d 363, 366-68 (5th Cir. Oct. 7, 1981) (Unit A), to determine which nation's laws should apply. The court ultimately determined that United States law should apply. The court based this determination substantially on two factual findings: (1) that the place of performance of the contract was the United States, and (2) that the subject matter of the contract consisted of airline tickets, and that these tickets were located in the United States.

After finding that United States law properly applied, the court found that Aktina was entitled to a maritime lien under CIMLA, and that this lien's priority was superior to that of the Banks' preferred ship mortgage. The court fixed the

4

amount of the lien at 137,405.26 euro.  Then, recognizing that United States district courts cannot award damages in foreign currencies, the court converted the award to 146,787.52 United States dollars.

### III.  Contentions of the Parties

The Banks contend that the district court erred in its determination that United States law should apply to this transaction.  Alternatively, the Banks contend that even if the district court correctly chose United States law, it erred in finding that Aktina is entitled to a maritime lien under CIMLA.  Aktina agrees with the district court's characterization of both the place of performance and the location of the subject matter of the contract as the United States, and contends that the court's decision to base its choice-of-law determination substantially on these factors was correct.  Aktina also contends that the district court properly found that CIMLA applies and that, once applied, CIMLA grants Aktina a valid maritime lien.

### IV.  Standards of Review

We review choice-of-law determinations de novo.  *Sigalas v. Lido Maritime, Inc.*, 776 F.2d 1512, 1516 (11th Cir. 1985).  The factual findings underpinning a choice-of-law determination are reviewed for clear error.  *Szumlicz v. Norwegian America Line, Inc.*, 698 F.2d 1192, 1196 (11th Cir. 1983).  A finding

of fact is clearly erroneous when the entirety of the evidence leads the reviewing court to a definite and firm conviction that a mistake has been committed. *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S. Ct. 525, 542 (1948). When reviewing the judgment of a district judge sitting in admiralty with no jury, we may not set aside the court's findings of fact unless they are clearly erroneous. *McAllister v. United States*, 348 U.S. 19, 20, 75 S. Ct. 6, 8 (1954); *Harbor Tug & Barge, Inc. v. Belcher Towing Co.*, 733 F.2d 823, 825 (11th Cir. 1984)*; Sisung v. Tiger Pass Shipyard Co.*, 303 F.2d 318, 322 (5th Cir. 1962). We review conclusions of admiralty law de novo. *Venus Lines Agency, Inc. v. CVG Int'l America, Inc.*, 234 F.3d 1225, 1228 (11th Cir. 2000).

## V. Discussion

A. <u>Choice of Law</u>

No written contract between the parties existed, and the district court conducted a choice-of-law analysis. The district court correctly resolved the first issue in any such analysis–whether a conflict of laws exists. *See Brewer v. Memphis Pub. Co., Inc.*, 626 F.2d 1238, 1242 n.7 (5th Cir. 1980). The district court properly concluded that the application of United States law leads to the conclusion that Aktina is entitled to a maritime lien for the travel services

6

provided, while the application of Greek law leads to the opposite conclusion.

Thus, we must move to the next step–determining which nation's law to apply.

Generally, to determine which law to apply in an admiralty case, courts examine several factors, as outlined in *Lauritzen v. Larsen*, 345 U.S. 571, 583-92, 73 S. Ct. 921, 928-33 (1953), and *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 382, 79 S. Ct. 468, 485 (1959). These factors include: (1) the situs of the claim; (2) the law of the flag of the vessel; (3) the allegiance of the seamen; (4) the allegiance of the shipowner; (5) the place of the contract; (6) the access to a foreign forum; and (7) the law of the forum making the choice of law. In *Hellenic Lines Ltd. v. Rhoditis*, 398 U.S. 306, 309, 90 S. Ct. 1731, 1734 (1970), the Supreme Court added the additional factor of the shipowner's base of operations. *See also Thorsteinsson v. M/V Drangur*, 891 F.2d 1547, 1555 n.9 (11th Cir. 1990) (remanding in part for a determination of the applicable law to apply and instructing the district court to apply the foregoing cases).

Nevertheless, we agree with the district court that the Supreme Court's conflicts jurisprudence in admiralty cases does not squarely apply here, as those cases, beginning with *Lauritzen*, generally address choice of law in maritime tort actions, while this action concerns a maritime contract. The *Lauritzen* Court provided a list of factors to be considered in a Jones Act case, and the two major

7

Supreme Court cases applying and expanding *Lauritzen* both arose out of tort. *See*

*Rhoditis*, 398 U.S. at 307, 90 S. Ct. at 1733; *Romero*, 358 U.S. at 355, 79 S. Ct. at

471. Thus, the Supreme Court has not specifically laid down a choice of law

approach in maritime contract cases. Like the district court, we think that the Fifth

Circuit's opinion in *Gulf Trading & Transport Co. v. The Vessel Hoegh Shield*,

658 F.2d 363, 366-368 (5th Cir. 1981) (Unit A), provides the proper analysis for

choice-of-law problems in maritime contract cases like this one, and we adopt it

today as this circuit's approach.[1]

In *Hoegh Shield*, the Fifth Circuit distinguished *Lauritzen* and applied the

Second Restatement of Conflicts of Law, Sections 6 (Choice-of-Law Principles)

and 188 (Validity of Contracts and Rights Created Thereby), as well as

governmental interest analysis, to hold that the proper choice of law in the contract

dispute before it was the United States. *Id.* The contract in *Hoegh Shield* involved

the physical provision of necessaries in the form of supplies and fuel by an

American supplier directly to a foreign vessel in what was then an American port,

---

[1]The decisions of the former Fifth Circuit rendered before October 1, 1981 are binding on this circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc). After that date, however, only the decisions of the continuing Fifth Circuit's Administrative Unit B are binding on this circuit, while Unit A decisions are merely persuasive. *Stein v. Reynolds Sec., Inc.,* 667 F.2d 33, 34 (11th Cir. 1982). *See generally*, Thomas E. Baker, *A Primer on Precedent in the Eleventh Circuit*, 34 Mercer L. Rev. 1175 (1983).

the Panama Canal Zone. *Id.* at 364-65. Applying in this case the analysis that the *Hoegh Shield* court conducted, the result clearly points to Greek law.

To conduct a choice-of-law analysis based on the Restatement, the court must determine which sovereign entity has the "most significant relationship" with the transaction at issue. *See* Eugene F. Scoles, Peter Hay, Patrick J. Borchers, & Symeon C. Symeonides, Conflict of Laws §2.14 (4th ed. 2004). Section 6 of the Restatement outlines several general principles to be considered when making this determination. However, for a contract dispute such as this one, the Restatement provides more specific factors in §188 to effectuate the general choice-of-law principles outlined in § 6. *See* Restatement (Second) Conflicts of Law §188(2). These factors are: (a) the place of contracting; (b) the place of negotiation; (c) the place of performance; (d) the locus of the subject matter of the contract; and (e) the domicile of the parties.

Here, the district court found that both the place of contracting (factor (a)), and the place of negotiation (factor (b)) were Greece, and this finding is not challenged on appeal. In addition, factor (e), the domicile of the parties, also points to Greek law because the domicile of Aktina is Greece, the domicile of OWC, the owner of the Vessel, is Liberia, and the domicile of the sole shareholder of OWC, Royal Olympic Cruises, is Greece. The Vessel also flew a Greek flag.

9

None of these facts are in dispute, probably because the district court placed little importance on them. Instead, the court found that the most important factors were (c), the place of performance, and (d), the locus of the subject matter of the contract.

As to the place of performance, the district court concluded that the services were "for the physical transport of crew members to and from the United States." (R.10-373 at 17.) This factual conclusion is clearly erroneous, and it is the principal conclusion upon which the district court's ruling rests. The services provided by Aktina did not include the physical transport of any crew members. Aktina is not an airline–it is a travel agent. The service that it provided was the purchasing of plane tickets. This service was entirely performed in Greece. And, the district court left out of its analysis other important aspects of performance, such as payment and breach. Aktina invoiced the cost of the tickets to OWC in Greece. OWC was to pay the invoices in euro, and OWC breached the contract in Greece by not paying the invoices. Thus, these aspects of performance bolster the conclusion that the place of performance was Greece.

The district court's conclusion based on factor (d), the locus of the subject matter of the contract, is also questionable. The court characterized the subject matter of the contract as tickets, and said that these tickets were uniformly located

in the United States. But it is clear from the record that roughly half of the tickets were not picked up in the United States, but in airports around the world–primarily in Greece. This is because roughly half of the arrangements were made to ensure that crew members could travel to the United States and make arrangements on their own to join the Vessel there. The district court correctly found that each of the tickets was in the United States either at the beginning of a flight or at the end of it, but each ticket was also in another country–most often Greece–at the other end of each flight. To conclude, then, that the locus of the subject matter of the contract was solely the United States was erroneous.

Once this error and the erroneous factual determination that the place of performance was the United States are corrected, the § 188 factors point overwhelmingly to Greece. And, the Restatement states that, when one state is both the place of negotiation and the place of performance of a contract, that state's law should usually govern the contract. Restatement (Second) Conflicts of Law §188(3). In this case, Greece was both the place of negotiation and the place of performance, and in the absence of other significant factors pointing toward United States law, Greece's law should apply.

Section 6 of the Second Restatement of Conflicts of Law contains the general factors that courts should consider in any choice-of-law analysis. The

11

parties have not briefed the application of these factors, and the district court did not rely on them. However, we briefly review them to determine whether they establish that the United States has a more significant relationship than Greece to the transaction at issue, despite our conclusion based on the § 188 factors. The § 6 factors are: (a) the needs of the international system; (b) the relevant policies of the forum (here, CIMLA); (c) the relevant policies of other interested states (here, Greece's maritime law that does not provide maritime liens for necessaries); (d) the protection of justified expectations; (e) the policy underlying the field of law in question; (f) the interest in predictability and uniformity; and (g) the ease in determining and applying the relevant law. Of these factors, three–(a), (e), and (f)–do not favor either nation's laws. Two–(b) and (g)–favor the application of United States law. The remaining two–(c) and (d)–favor the application of Greek law. Thus, after reviewing the § 6 factors, we conclude that they do not establish that the United States has a more significant relationship than Greece to the transaction at issue here.

After applying the Restatement analysis, the *Hoegh Shield* court further supported its conclusion with a brief governmental interest analysis, from which it concluded that the United States had the stronger interest in the case before it. *See Hoegh Shield*, 658 F.2d at 368. In this case, as with the § 6 Restatement factors,

12

the parties have not argued that governmental interest analysis resolves the choice-of-law issue, and the district court did not conduct a governmental interest analysis. Nevertheless, consistent with *Hoegh Shield*, we review the competing interests of the United States and Greece as to the application of their laws to this transaction. We conclude from this review that Greece's interests outweigh those of the United States.

The United States has an interest in ensuring that United States suppliers, and those supplying goods and services to ships in United States ports, are protected from the defaults of vessels after receiving their supplies or services. CIMLA supports this policy. However, similar to the United States's interest as to maritime transactions in its territory, Greece has a strong interest in ensuring that those who negotiate contracts in Greece will receive the benefit of their bargains. Greece also has an interest in determining the proper protections and priorities for Greek corporations and foreign vessel operators when they deal with each other. To apply United States law to what is almost completely a Greek transaction would violate Greece's interests in governing transactions within its borders, while it would do little to serve the United States's interests under CIMLA. Thus, governmental interest analysis favors the application of Greek law.

Based both on our analysis of the factors outlined in the Second Restatement of Conflicts of Law and on our analysis of the competing governmental interests in this case, we hold that Greek law is the proper law to apply to the transaction between Aktina and the Vessel. The district court erred in applying United States law.

B. <u>No Maritime Lien Exists</u>

Once the proper choice of law is made, it becomes clear that Aktina is not entitled to a maritime lien superior to the Banks' preferred mortgage lien. No provision of Greek law provides for such a lien. Greek law establishes a statutory lien system, but statutory lien rights do not carry priority over preferred ship mortgages on foreign vessels. *See* 46U.S.C. § 31326.

## VI. Conclusion

Based on the foregoing, Aktina is not entitled to payment of its receivables from the proceeds of the foreclosure sale of the Vessel. Accordingly, we reverse the district court's judgment as to Aktina and remand for entry of judgment in favor of the Banks on Aktina's claim.

REVERSED AND REMANDED.