In re TITAN CRUISE LINES, a Cayman Islands exempted company, registered as a foreign corporation in Florida as Titan Cruise Lines, Inc., Debtor.

Titan Cruise Lines, Plaintiff,

v.

Scott Elliot and Scott Elliot, Inc., a Florida Corporation, Defendants.

Bankruptcy No. 8:05–bk–15154–ALP. Adversary No. 05–00841.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Sept. 18, 2006.

Gregory M. McCoskey, Glenn Rasmussen and Fogarty, P.A., Tampa, FL, for Debtor.

### FINAL JUDGMENT

ALEXANDER L. PASKAY,
Bankruptcy Judge.

THIS CAUSE came on for consideration upon the Court's own Motion for the purpose of entering a Final Judgment in the above-captioned adversary proceeding. The Court has considered the record and finds that this Court has entered an Order on Motions for Summary Judgment. Therefore, it is appropriate to enter Final Judgment.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that Final Judgment be, and the same is hereby, entered in favor of the Defendants, Scott Elliot and Scott Elliot, Inc., and against Debtor Titan Cruise Lines and Intervening Plaintiff First American Bank, N.A., and all claims asserted in the three-count Complaint in the above-captioned Adversary Proceeding be, and same are hereby, dismissed with prejudice.

### ORDER ON DEFENDANTS' MOTION FOR FINAL SUMMARY JUDGMENT AND FIRST AMERICAN BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT. (Doc. Nos. 58 and 63)

THE MATTERS under consideration in this Chapter 11 case of Titan Cruise Lines, a Cayman Islands Exempted Company ("Debtor"), are the Defendants' Motion for Final Summary Judgment (Doc. No. 58), filed by Scott Elliot and Scott Elliot Inc. ("Defendants"), and a Motion for Summary Judgment (Doc. No. 63), filed by Plaintiff Intervenor First American Bank, N.A. ("Bank"), the largest secured creditor of the Debtor.

The Debtor filed the above-captioned adversary proceeding seeking to recover property of the estate. The claims as pled in the Amended Complaint are as follows: The claim in Count I for Money Lent contends that the Debtor is entitled to a judgment for $200,000 against the Defendant for loans that have not been repaid. The claim in Count II is for the Enforcement of an Oral Promise to Pay and contends the Defendant borrowed $200,000 from the Debtor with an oral promise to repay that has not been fulfilled. The claim in Count III is for Liability on a Worthless Instrument, brought pursuant to Section 68.065 of the Florida Statutes. The Debtor contends that the Defendant provided checks as collateral for the loans, but later stopped payment on the checks with the intent to defraud the Debtor.

The Debtor seeks $200,000, plus treble damages, prejudgment interest, and costs.

The Bank's Motion for Summary Judgment only concerns the Claims in Count I (Money Lent) and in Count II (Oral Promise to Pay). The Debtor has elected to pursue all claims as pled in the Amended Complaint.

It is the contention of the Defendants that, based on the record, there are no genuine issues of material fact and based on same they are entitled to a judgment in their favor as a matter of law dismissing all three Counts of the Complaint with prejudice. In support of their Motion for Summary Judgment, the Defendants contend that Florida has a strong public policy against enforcing gambling debts like the Defendants' and, moreover, the debt is a void and unenforceable gambling debt under Fla.Stat. § 849.26 (2004). The Defendants cite numerous state law cases where courts have refused to enforce similar gambling debts, even though the debts were valid and enforceable where incurred. The Defendants further contend that Florida's choice of law rules prohibit the courts of this state from applying the law of another State if to do so would be repugnant to an established public policy of this state, citing *Northland Casualty Co. v. HBE Corp.*, 160 F.Supp.2d 1348, 1360–61 (M.D.Fla.2001).

The Bank, while conceding that the facts relevant to the pivotal issue are indeed without dispute, contends that the Debtor is entitled to a judgment as a matter of law in the amount pled in the Complaint because under either a state or federal conflict of law analysis, the relevant law is that of St. Vincent and the Grenadines and, according to the Bank's expert, the debt is a valid, enforceable obligation under the laws of that sovereign.

In support of its Motion for Summary Judgment, the Bank claims that this Court need not apply state conflict rules to the present matter because this is a federal court applying federal Bankruptcy Law. The Bank cites numerous cases which stand for the proposition that when a federal court is applying a federal law which references state law (e.g., the Bankruptcy Code), the court is not required to use the conflict rules of the forum state, but instead may use its independent judgment to decide which law is most relevant to the controversy. *See In re The New Power Co.*, 313 B.R. 496, 514 n. 4 (Bankr.N.D.Ga. 2004); *In re L.M.S. Assoc., Inc.*, 18 B.R. 425, 428 (Bankr.S.D.Fla.1982); *Woods–Tucker Leasing Corp. v. Hutcheson–Ingram*, 642 F.2d 744, 748 (5th Cir.1981); *Matter of Crist*, 632 F.2d 1226, 1229 (5th Cir.1980)(citing 1A Moore's Federal Practice P 0.325 (2d ed.1979)).

The Bank also contends that the "most significant relationship" approach in Sections 6 and 188 of the Restatement (Second) Conflict of Laws, as adopted by the Eleventh Circuit in *Dresdner Bank AG v. M/V Olympia Voyager*, 446 F.3d 1377 (11th Cir.2006), is the appropriate federal conflict analysis to be applied in this case. Accordingly the Bank asserts that the facts in the record indicate that the transaction has a more significant relationship to St. Vincent and the Grenadines and therefore, the law of that sovereign ought to be controlling.

The Bank has asserted in the alternative that even if state conflict of law principles govern this proceeding, Florida's conflict rules require the law of St. Vincent and the Grenadines to be applied in this proceeding. In support of this contention, the Bank cites the case of *LaFarge Corp. v. Travelers Indemnity Co.*, 118 F.3d 1511

(11th Cir.1997). In *LaFarge,* the court noted that Florida courts have adopted the *lex loci contractus* rule to conflict of law problems involving contract disputes. According to this doctrine, a court will look to the law of the place where the contract was made to determine the rights of the parties. The Bank also cites the case of *Lauritzen v. Larsen,* 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953), in which the Supreme Court reaffirmed the "universal rule of maritime law" that actions aboard a ship are governed by the law of the sovereign whose flag the ship flies. *Id.* at 584–85, 73 S.Ct. 921. Thus, according to the Bank, because the Ocean Jewel is a St. Vincent-flagged vessel, the loan transaction which is the subject of the present dispute, being entered while on board, was made in the territory of St. Vincent and the Grenadines and is therefore governed by the laws of that nation.

The record reveals that the relevant facts are indeed without dispute and they are as follows. At the relevant time, Titan Cruise Lines was the owner of an ocean going vessel, the Ocean Jewel, operating off the West Coast of Florida outside of the territorial limits of the United States. The Ocean Jewel is registered in the Island of Saint Vincent and the Grenadines, sailing under the flag of Saint Vincent and the Grenadines. Saint Vincent and the Grenadines is an independent sovereign state, part of the Commonwealth of Nations and of the Caricom Community.

The Defendant Scott Elliot is the president and sole stockholder of Scott Elliot Inc., a Florida corporation, which is the other defendant sued by the Debtor. On September 16, 2005, Elliot was picked up by a representative of the Debtor and taken to a dock where a catamaran used as a shuttle, owned and operated by the Debtor, was moored. Upon boarding the shuttle, Mr. Elliot was ferried to the Ocean Jewel, which was anchored outside the territorial limits of the United States. This record leaves no doubt that the Ocean Jewel was operated solely as a gambling casino and was not a cruise ship, notwithstanding the reference to "cruise" in the name of the Debtor.

Upon his arrival aboard the Ocean Jewel, the Defendant proceeded to the "cage" and tendered a post-dated check drawn on the account of Scott Elliot Inc. in the amount of $50,000. The Defendant received gambling chips in the same amount and proceeded to the blackjack table, where he promptly lost the $50,000 worth of gambling chips. While still seated at the blackjack table, the Defendant handed the dealer a Scott Elliot Inc. post-dated check in the amount of $75,000 for which he received $75,000 worth of the gambling chips. After losing all the chips he just "purchased" from the dealer with the post-dated corporate check, the Defendant tendered yet another post-dated check to the dealer while still seated at the blackjack table. The amount of this check was in the amount of $75,000 and was also drawn on the corporate account. The chips he received in exchange for this third check were also lost, just as before. After this final loss, the Defendant left the Ocean Jewel and subsequently stopped payment on all three post-dated checks. The Debtor's credit advances to the Defendant, totaling $200,000, were never repaid.

It is clear from the record and it is undisputed by the Bank that the debt owed by the Defendants is in fact a gambling debt as contemplated by the Florida Statute. Obviously the Debtor provided the casino chips in exchange for all three checks for the sole purpose of gambling;

indeed, Mr. Elliot wrote and tendered two of the checks while still seated at the blackjack table. Although the vessel had a lounge and restaurant in addition to the casino, neither one accepted casino chips as payment for goods or services.

It is evident from the foregoing that the primary issue to be resolved in this proceeding is which law should be applied to the claims, i.e., whether the law of Florida or whether the law of St. Vincent and the Grenadines should determine the rights of the parties. That determination will necessarily dictate the outcome of this dispute because it is clear that the debt is void and unenforceable under the laws of Florida, but valid under the law of St. Vincent. However, in order to determine the applicable body of law, it is first necessary to determine which conflict of law rules, state or federal, are appropriately applied to that end. For the following reasons, this Court is satisfied that the conflicts jurisprudence of the State of Florida should be applied to this proceeding.

■ The Bank contends that because this is a Federal court applying federal bankruptcy law, the laws and interests of the State of Florida are not relevant. Yet even a cursory analysis of the claims in the Complaint leaves no doubt that the claims are based purely on state law and not on any provision of the Bankruptcy Code or any other Federal statute or the admiralty jurisdiction of the federal courts. Thus, the jurisdiction of this Court to consider the claims asserted in the Complaint, contrary to the assertion of the Bank, is based on 28 U.S.C. § 157(b), which is the source of the jurisdictional power granted to this Court by the District Court. It is clear that the jurisdiction is based on the happenstance that the Plaintiff, who commenced this adversary proceeding, is a Debtor who sought relief under Chapter 11 of the Bankruptcy Code.

■ It is well established that suits filed in the district court based on diversity jurisdiction are governed by the law of the forum, *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and the district court must apply the conflicts rules of the forum. *See Klaxon v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). There is no logical reason why this same rule should not apply to a suit in a bankruptcy court which is not filed to enforce any provision of the Bankruptcy Code. Therefore, it is appropriate for this Court to apply the conflict rules of the State of Florida. *See Hillsborough Holdings Corp. v. Celotex Corp.,* 166 B.R. 461, 468 (Bankr. M.D.Fla.1994).

■ Even assuming without conceding that this Court should apply the doctrine of *lex loci contractus,* it is clear that the only nexus the Plaintiff–Debtor has with St. Vincent in the Grenadines is that the Ocean Jewel is registered there. The Debtor, owner of the Ocean Jewel, is a Cayman Islands corporation with its business operations headquartered in Florida. And while it is true that the Ocean Jewel is registered in St. Vincent and the Grenadines, it is equally true that the vessel flies the flag of that sovereign merely as a "flag of convenience." Moreover, it would defy credibility to infer that the Defendant, Scott Elliot, was able to board the Ocean Jewel and obtain a $200,000 credit advance with post-dated checks without some pre-existing arrangement with the Debtor; obviously the Defendant was a repeat player with an established line of credit. It is also fair to assume that the arrangement with representatives of the Debtor was

made in Florida before the Defendant boarded the ship.

The case of *Dresdner Bank v. M/V Olympia Voyager* is likewise of no help to the Debtor and the Bank in this matter. The 11th Circuit's holding in *Dresdner* pertained to an admiralty claim brought under the Commercial Instruments and Maritime Liens Act and, accordingly, its holding was intended to apply to maritime contracts cases brought under the admiralty jurisdiction of the District Court. *Dresdner*, 446 F.3d at 1382. The conflict of law analysis adopted by the court in *Dresdner* is therefore not applicable to the instant proceeding which involves neither a federal statute nor a maritime contract.

■ Under Florida's choice of law rules, a court is not permitted to apply the laws of another forum if to do so would be repugnant to Florida's public policy. *See Trafalgar Developers, Ltd. v. Geneva Investment Ltd.*, 285 So.2d 593, 597 (Fla.1973)("[P]ublic policy may preclude enforcement of the contract valid under the laws of the place of lex loci contractus where the same is contrary to the law and public policy of Florida"). *See also Northland Casualty Co.*, 160 F.Supp.2d at 1360–61.

■ The State of Florida has a stringent public policy against the enforcement of gambling debts that is well established in the decisional law of its courts. Numerous decisions of Florida Appellate Courts have held that a gambling obligation, even if valid in the state where it was created, cannot be enforced in Florida because it would be against the established public policy of this state. In one such case, *Dorado Beach Hotel Corp. v. Jernigan*, 202 So.2d 830 (Fla.Dist.Ct.App.1967), the court, applying the choice of law rules of Florida, found that even though a gambling debt incurred in Puerto Rico was valid and enforceable in Puerto Rico, it could not be enforced in Florida because it would violate the public policy of Florida. The *Dorado* court cited the case of *Young v. Sands*, 122 So.2d 618 (Fla.Dist.Ct.App.1960), which also held that gambling debts are not enforceable by courts of this state based on the public policy of Florida, even though they are valid and enforceable in the state where the debt arose.

This strong public policy has been codified in Florida Statute § 849.26, which provides that:

> All promises, agreements, notes, bills, bonds or other contracts, mortgages or other securities, when the whole or part of the consideration if for money or other valuable thing won or lost, laid, staked, betted or wagered in any gambling transaction whatsoever, regardless of its name or nature, whether heretofore prohibited or not, or for the repayment of money lent or advanced at the time of a gambling transaction for the purpose of being laid, betted, staked or wagered, are void and of no effect; provided, that this act shall not apply to wagering on pari-mutuels or any gambling transaction expressly authorized by law.

In sum, it is clear that Florida courts have interpreted this provision as a broad statement of public policy that precludes enforcement of gambling debts, regardless of whether such debts are valid where created.

■ Based on the foregoing, this Court is satisfied that Florida conflict of law jurisprudence dictates that this Court not apply the law of St Vincent and the Grenadines where doing so would violate Florida

public policy by resulting in the enforcement of an invalid gambling debt. This Court is further convinced that the debt resulting from the transaction between the Debtor and the Defendant falls within the purview of Fla. Stat. § 849.26 and is therefore unenforceable as a matter of state law. Therefore, because the gambling debt owed by Defendants Scott Elliot and Scott Elliot Inc. is a void and unenforceable obligation, there are no genuine material issues of fact yet to be resolved and the Defendants are entitled to a judgment as a matter of law.

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that the Defendants' Motion for Final Summary Judgment (Doc. No. 58) be, and the same is hereby, granted. It is further

ORDERED, ADJUDGED AND DE-CREED that First American Bank, N.A.'s Motion for Summary Judgment (Doc. No. 63) be, and the same is hereby, denied.

A separate final judgment shall be entered in accordance with the foregoing.