### In re Bill J. HIONAS, Debtor.

### Desert Palace, Inc., d/b/a Caesars Palace, Plaintiff,

### v.

### Bill J. Hionas, Defendant.

### Bankruptcy No. 05–45658–BKC–LMI. Adversary No. 06–1203–BKC–LMI.

United States Bankruptcy Court, S.D. Florida.

Oct. 30, 2006.

Scott N. Brown, Esq., Miami, FL, for Joel L. Tabas, Interested Party.

James B. Miller, Esq., Miami, FL, for Bill J. Hionas, Defendant.

Ross B. Toyne, Esq., Miami, FL, for Desert Palace, Inc., Plaintiff.

### ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

LAUREL MYERSON ISICOFF, Bankruptcy Judge.

This matter came before the Court on October 11, 2006 at 10:30 a.m. on Motion by the Plaintiff, Casino Palace, Inc. d/b/a Caesars Palace (the "Casino") for Partial Summary Judgment (the "Motion"). Because the Court finds there are disputed issues of material fact as to whether Florida or Nevada law applies in this matter, and as to the amount of the Debtor's liability to the Casino, partial summary judgment is denied.

### SUMMARY

In this adversary proceeding the Casino seeks a determination that the Debtor's alleged debt to the Casino arising out of gambling markers the Debtor signed is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). The Debtor contends that the debt, if there is one, is unenforceable because gambling debts are unenforceable in Florida as against Florida's statutorily stated public policy. The Casino's Motion seeks a determination of three issues by this Court—first, that Nevada law applies

to the determination of the enforceability of the debt, second, that since the Debtor has admitted in a deposition that the Debtor owes the Casino $84,000.00, the Court should quantify the underlying debt at that amount, and third, that the Casino has a valid and enforceable claim. The Debtor contends that this Court must apply Florida conflict of law rules which would require application of Florida law, thus rendering any alleged debt unenforceable, and also disputes that the Debtor acknowledged in any deposition that he owes the Casino any money.

## BACKGROUND

The Casino filed a complaint against the Debtor alleging that the Debtor owes the Casino $84,000 arising from gambling markers signed by the Debtor at Caesar's Palace, which markers were allegedly returned to the Casino unpaid by the Debtor's bank. The Casino also alleges that the circumstances surrounding the extension of credit represented by the markers rendered the $84,000.00 obligation nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

The Debtor filed his Answer, raising several affirmative defenses, including that the debt is unenforceable under the public policy of the State of Florida.[1] Every fact alleged by the Casino in the complaint is disputed by the Debtor other than the Debtor's current place of residence, the Casino seeks to enforce a gambling debt, and this matter is a core proceeding.

The Debtor did not file a Response to the Motion but the Court has considered arguments raised by the Debtor at the hearing as well as the affirmative defenses raised by the Debtor in response to the Complaint.

## DISCUSSION

### The Casino Has Failed To Demonstrate It Is Entitled To Partial Summary Judgment

A party will be entitled to summary judgment where such party demonstrates that there is no genuine issues as to any material fact. *HCA Health Servs. of Ga., Inc. v. Employers Health Ins. Co.*, 240 F.3d 982 (11th Cir.2001). In determining whether summary judgment is appropriate the court will consider the pleading, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any. Fed.R.Civ.P. 56(c). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Gray v. Manklow (In re Optical Technologies, Inc.)*, 246 F.3d 1332 (11th Cir.2001)(internal citation omitted).

█ The Casino states in the Motion that the Debtor admitted various facts in his deposition, including that he owes the Casino $84,000.00. However, the Casino did not attach a copy of all, or any part of, the deposition transcript to the Motion. In fact, the Debtor's deposition transcript was not filed, or apparently even transcribed, at the time of the hearing on the Motion. At the hearing the Debtor disputed that he made such an admission at the deposition, and disputed that any debt is owed to the Casino.

█ The Casino also argues that Nevada law applies as a matter of law to this dispute because the Debtor agreed that Nevada law would apply. In support of this argument, the Casino attached to the Motion copies of some documents that pro-

---

1. The Debtor has asserted several other affirmative defenses to the relief sought in the Complaint. However, none of those defenses were addressed by Casino in the Motion, which was limited to the relief described in this order.

vide Nevada law will apply in any action to collect the debt represented by the gambling markers. However, these documents are not signed by the Debtor, and, other than arguing in the Motion that these unsigned agreements were "connected to" the markers, the Casino does not provide an explanation of how the Debtor would be bound by this choice of law provision. Moreover, the Casino did not include any affidavit authenticating these documents or explaining what connection these documents had to the gambling markers or cite to any pleading, depositions filed with the Court, admissions or answers to interrogatories, that would establish there are no disputes as to these material issues of fact.

◼ Finally, the Casino argues that its debt is enforceable as a matter of law. The Debtor counters that, as a matter of law, Florida law applies to the debt underlying this adversary proceeding, thus the debt is unenforceable and therefore the Debtor is entitled to judgment in its favor as a matter of law.[2] In support of its position, the Casino incorrectly argues that this Court must apply the Florida choice of law rules in determining which law applies. While acknowledging there is a Florida statute, and cases, that state gambling is against Florida's public policy, the Casino argues that a Florida court would apply the parties' choice of law, which the Casino argues the Debtor agreed would be Neva-

da. Under Florida law, Florida courts will honor the parties' agreement on choice of law unless to do so would violate Florida's public policy. The Casino then argues that gambling cannot possibly still be a violation of Florida's public policy because Florida now allows all sorts of gambling (lottery, gambling cruises, etc.). The Casino alternatively argues that federal bankruptcy law preempts state law and thus the Casino's claim should be allowed.

◼ There is no question that were this Court a Florida court, or even a court with only diversity jurisdiction over this matter, Florida law would apply and this Court could not enforce this debt. Gambling, with certain exceptions, is against Florida's public policy. Fla. Stat. § 849.26 (2005) unequivocally provides that any type of gambling debt that is not expressly authorized by law is "void and of no effect". Florida courts have repeatedly interpreted this provision to mean that only gambling debts authorized by *Florida* law are enforceable, and that gambling debts, even when incurred in a jurisdiction where the debt is legal and enforceable, cannot be enforced by a Florida court. *See Carnival Leisure Industries, Ltd. v. Herman*, 629 So.2d 882 (Fla. 4th DCA 1993); *Froug v. Carnival Leisure Industries, Ltd.*, 627 So.2d 538 (1993); *Barquin v. Flores*, 459 So.2d 436 (Fla. 3d DCA 1984).[3]

◼ Even if application of the Florida conflict of law rules would otherwise result

---

**2.** There is no question that this Court could enter summary judgment in favor of the Debtor, the non-moving party sua sponte, so long as the Casino had an opportunity to fully and fairly present its position. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Massey v. Congress Life Ins. Co.*, 116 F.3d 1414 (11th Cir.1997). Accord *Fabric v. Provident Life & Acc. Ins. Co.*, 115 F.3d 908 (11th Cir.1997) (so long as the party against whom judgment will be entered has an opportunity to present its arguments on a particular issue, the appellate court has

authority to enter summary judgment in favor of a non-moving party). The Casino has fully addressed this issue in its Motion and its argument.

**3.** However, if a gambling debt has been reduced to judgment, Florida courts will enforce the foreign judgment under the full faith and credit clause of the United States Constitution. *M & R Investments Co., Inc. v. Hacker*, 511 So.2d 1099 (Fla. 5th DCA 1987).

in applying the law of the state in which the gambling debt occurred, either by agreement of the parties or by virtue of the relationship of the underlying transaction to the gambling state [4], because enforcement of the debt is against the public policy of the State of Florida, Florida law dictates that the law of Florida would nonetheless apply. *See Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.,* 761 So.2d 306 (Fla.2000).

The Casino invites this Court to independently determine that, notwithstanding the clear language of Fla. Stat. § 849.26, gambling is no longer against the public policy of Florida. Since the statute has not been amended, notwithstanding that the Florida legislature has had the opportunity to do so since introduction of the lottery and other legalized gambling in Florida, this Court does not believe it appropriate for this Court to make such a determination. Moreover, such a determination is not necessary to this Court's decision.

▆▆▆▆ A federal court hearing a matter pursuant to its diversity jurisdiction must apply the law of the state in which the court sits, *Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), including the conflict of law rules of the state in which the federal court sits, *Klaxon Co., v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). However, a federal court with jurisdiction over a matter by virtue of its bankruptcy jurisdiction, when considering the allowance of claims, is not sitting as a court of diversity. In *Vanston Bondholders Protective Comm. v. Green,* 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162 (1946),

decided after *Erie* and *Klaxon,* the Supreme Court held that

In determining what claims are allowable and how a debtor's assets shall be distributed, a bankruptcy court does not apply the law of the state where it sits. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, has no such implication. That case decided that a federal district court acquiring jurisdiction because of diversity of citizenship should adjudicate controversies as if it were only another state court ... But bankruptcy courts must administer and enforce the Bankruptcy Act as interpreted by this Court in accordance with authority granted by Congress to determine how and what claims should be allowed under equitable principles.

329 U.S. at 162–163, 67 S.Ct. 237 (citation omitted).

▆▆▆▆ There is an apparent split among courts, including within the Middle District of Florida, as to whether a bankruptcy court should apply the conflict of law provisions of the state in which it sits, or should apply federal law to determine which law should apply.[5] However, there does not appear to be a conflict when the bankruptcy court is considering allowance of claims, which is a matter subject to the bankruptcy court's core jurisdiction. In *In re Smith,* 66 B.R. 58 (Bankr.D.Md.1986) the Maryland bankruptcy court, citing *Vanston,* held that in reviewing the allowability of a claim, the "applicable law" of 11 U.S.C. § 502(b) is the "law of the place of the making of the contract, not the forum, unless the parties indicate otherwise." 66

---

4. Florida has adopted the "significant relationships test" set forth in the Restatement (Second) of Conflict of Laws. *Bishop v. Florida Specialty Paint Co.,* 389 So.2d 999 (Fla. 1980).

5. For a general discussion of this topic see Paul R. Glassman, *Choice of Law in Bankruptcy Cases, Part I,* 24–Sep Am. Bankr.Inst. J. 32 (2005).

B.R. at 61. The court upheld a claim for a New Jersey gambling debt notwithstanding that the enforcement of the debt might be against Maryland's public policy.[6] *See also Gower v. Hotel Ramada of Nevada (In re Knight),* 76 B.R. 857 (Bankr.M.D.Ga.1987)(enforcing a gambling debt notwithstanding that gambling is against the public policy of Georgia).

In *Mirage–Casino Hotel v. Simpson (In re Simpson),* 319 B.R. 256 (Bankr. M.D.Fla.2003) the bankruptcy court found enforceable a gambling debt and excepted that debt from discharge. Following *Vanston,* the court held that, although Florida law would make the debt unenforceable, the court would not follow Florida law. Rather, the court held that Congress dictated through 11 U.S.C. § 105(5) that "claim" should be "given the broadest possible meaning due to the Congressional intent to bring all legal obligations of a debtor within the bankruptcy case." 319 B.R. at 265. Thus, the court held, Florida's statutory provision regarding the unenforceability of gambling debts was preempted by the Bankruptcy Code's broad definition of claim.

In *Mandalay Resort Group v. Miller (In re Miller),* 292 B.R. 409 (9th Cir. BAP 2003), the appellate court reversed the California bankruptcy court's dismissal of a creditor's complaint to determine dischargeability of a gambling debt that was incurred in Nevada. Noting that in the Ninth Circuit federal common law choice of law rules apply in bankruptcy cases, the court held that Nevada law, pursuant to which the debt was enforceable, would apply, rather than California law, where enforcement of a gambling debt is against California's public policy.

The two bankruptcy cases cited by the Debtor where the court applied the conflict

of law provisions of the state in which the court sits did not mention *Vanston* and did not involve determination of the allowability of a claim. In *Taylor v. Green Tree Financial Servicing Corp. (In re Taylor),* 260 B.R. 548, 557 (Bankr.M.D.Fla.2000) the court stated without discussion that "[i]n determining which state's law applies, a bankruptcy court applies the choice-of-law rules of the state in which it sits." In that case, however, the court was determining which of two state laws should apply to determine the enforceability of an arbitration clause in connection with an adversary proceeding filed by the debtors to recover money damages against a lender for alleged violations of the Federal Fair Debt Collection Practices Act, a non-core proceeding.

In *Titan Cruise Lines v. Elliot (In re Titan Cruise Lines),* 353 B.R. 919 (Bankr. M.D.Fla.2006), the bankruptcy court entered summary judgment in favor of the defendant gambler, in an action by the debtor seeking to recover a $200,000 gambling cruise debt incurred by the gambler on the debtor's gambling cruise. The court rejected plaintiff/intervenor's argument that because the bankruptcy court is a federal court applying federal bankruptcy law, the laws of Florida "are not relevant", noting that the only reason the case was in bankruptcy court was because the plaintiff was a debtor. Noting the requirements of *Erie* and *Klaxon,* and with no mention of *Vanston,* the Court wrote "[t]here is no logical reason why this same rule [regarding applicability of state law in diversity cases] should not apply to a suit in a bankruptcy court which is not filed to enforce any provision of the Bankruptcy Code." *In re Titan Cruise Lines,* 353 B.R. at 923.

---

**6.** The court alternatively held that, based on changes in Maryland's attitude towards gambling, including a lottery, that gambling was no longer against Maryland's public policy.

 Although neither of these cases cited *Vanston,* their holdings are not necessarily inconsistent with *Vanston.* While *Vanston* is cited by many as an "interest on interest" case, the underpinning of that case was that the determination by a bankruptcy court of which state law should apply in adjudicating the allowability of a claim should not be dictated by the happenstance of where the bankruptcy case is located, but rather which law more logically relates to the claim and is most consistent with the dictates of the court's equitable jurisdiction.

> In determining which contact is the most significant in a particular transaction, courts can seldom find a complete solution in the mechanical formulae of the conflicts of law. Determination requires the exercise of an informed judgment in the balancing of all the interests of the states with the most significant contacts in order best to accommodate the equities among the parties to the policies of those states.

*Vanston,* 329 U.S. at 161–162, 67 S.Ct. 237.

Each of those cases that have followed *Vanston* when considering the allowance of a claim have been consistent in recognizing, explicitly or implicitly, the inapplicability of *Erie* and *Klaxon,* and applying a federal analysis to a matter which is clearly at the core of the court's bankruptcy jurisdiction—allowance of claims.[7]

 In the Eleventh Circuit, in order to determine which law should apply in making a decision regarding choice of law, the court must apply the "significant relationship" test of the Restatement (Second) of Conflict of Laws, although, depending on the nature of the dispute, more specific factors may have a bearing on the court's determination. See *Dresdner Bank A.G.*

*v. M/V Olympia Voyager,* 446 F.3d 1377 (11th Cir.2006).

 The Casino based its argument on the applicability of Nevada law solely on the language of written statements to which the Casino argues the Debtor is bound. The Casino did not argue that Nevada law should apply based on the significant relationships test, nor do the pleadings contain adequate information for this Court to make such a determination at this juncture. Thus, the issue of whether Nevada law applies to the determination of enforceability of the underlying debt will necessarily be decided based on the evidence presented at the trial scheduled for November 6, 2006.

Accordingly, it is ORDERED and ADJUDGED as follows:

1. The Defendant's Motion for Partial Summary Judgment is Denied.

2. The trial on this matter will go forward on November 6, 2006 as currently scheduled.

---

7. It is not necessary for this Court under these facts to make a determination whether, and under what circumstances, *Erie* or *Klaxon* would apply in a non-core matter.